SHANN, Respondent, v. CITY OF RAPID CITY, Appellant

(35 N. W.2d 399.)

(File No. 8946.  Opinion filed December 28, 1948.)

**Bellamy & Eastman,** of Rapid City for Plaintiff and Respondent.

**John Potter** and **H. R. Hanley,** both of Rapid City, for Defendant and Appellant.

RUDOLPH, J.  Plaintiff brought this action against the city to recover damages due to water and sewage backing up in a sanitary sewer to which plaintiff's property was connected.  The facts disclose that plaintiff's property was serviced by a six-inch sanitary sewer line constructed and maintained as a part of the municipal sewer system.  This six-inch line originated approximately two blocks east of plaintiff's property and ran in a westerly direction through the alley in the rear of the property and into a manhole within one-half a block from plaintiff's home.  There were about twenty connections on to this six-inch line and plaintiff's was the lowest connection and the one nearest the manhole.  The outlet from the manhole is an eight-inch line running north.  Entering into this manhole in addition to the six-inch line to which plaintiff's property is connected

is a fourteen-inch line coming from the west with its opening directly opposite that of the six-inch line. This sewer line to the rear of plaintiff's property was installed and has been in use since about 1906. On June 17, 1946, there was a very heavy rain in Rapid City, the weather records disclosing that 2.91 inches of rain fell from 7:30 A.M. June 17th to 7:30 A.M. June 18th. The records also disclose that in the 24 hour period preceding June 17th it had rained .19 of an inch. The flooding of plaintiff's premises occurred on the night of June 17th and the morning of June 18th. The house on the property does not permit of a basement drain because the floor of the basement is lower than the sewer outlet. The house has drains to the sewer from the toilet bowl, lavatory and bath tub in the bathroom and from a sink in the kitchen. In the yard outside the house there is a tile pipe line connected to the sewer which extends to the ground surface, which on June 17, 1946, was plugged with cement. The flooding of plaintiff's property occured mostly through the toilet bowl. It was apparent that water from the sewer system was backing up and overflowing through the toilet bowl into plaintiff's house. Plaintiff called the city authorities who inspected the manhole into which this sewer line empties and found that the manhole and the whole sewer system in that vicinity were surcharged with flood waters due to the heavy rain. The manhole was filled to a point higher than the outlet of the toilet bowl and the water was thereby caused to overflow from the toilet bowl and into the plaintiff's house. The flooding from the toilet bowl continued most of the night and until the cement plug in the yard drain was released where the flooding continued until sometime later in the morning. It appears from the record that the water flowing through the manhole was flowing freely and without obstruction but that there was more water flowing into the system than the size of the pipes would freely carry away. The trial court submitted the case to the jury and the jury returned a verdict in favor of the plaintiff. The city has appealed.

The trial court instructed the jury, in part, as follows: "The city must so construct its sewers so that it will not collect and cast either sewage or surface waters originating

elsewhere upon private property which would not otherwise have flowed or found its way thereon, as this is an invasion of private rights for which the city would be liable to the person injured thereby, and this regardless of whether or not the rainfall at the time was extraordinary or not." This instruction was a part of a series of instructions purporting to define to the jury the responsibilities and duties of the city in connection with its sewers. The duty defined by this instruction is not made subject to any other duty or responsibility as defined by the court, but is treated by the court in its instructions as an independent duty and responsibility, entirely separate and distinct from the other duties and responsibilities placed upon the city. By this instruction the court made the city absolutely liable if sewage or surface waters, which would not otherwise have found their way to plaintiff's property, were cast thereon through this sanitary sewer. The liability as thus defined is not dependent upon any negligence of the city, but is absolute. It is upon the principle announced by the court in this instruction that respondent mainly relies in support of the judgment. It is respondent's position that the principle was established by this court in the case of Nelson v. City of Sioux Falls, 67 S. D. 320, 292 N. W. 868. The facts in the Nelson case disclosed that through the grading of its streets and the construction of a storm sewer the city collected and precipitated upon plaintiff's property a large volume of water which otherwise would not have collected thereon. We held this to be a positive and direct invasion of the plaintiff's rights for which the city was liable in the same manner that it would have been had it intentionally invaded the property and damaged plaintiff. It should be noted, however, that the damage suffered by the plaintiff in the Nelson case was due solely to the acts of the city in which the plaintiff did not participate and had no part. It is apparent in this case that plaintiff would not have suffered the damage that she did suffer had she not connected her property with the sewer. This was a sanitary sewer, built in part at least for the benefit of the plaintiff, who accepted its benefits by connecting thereto. As was true in the case of Midwest Ool Co. v. City of Aberdeen, 69 S. D. 343, 10

N. W.2d 701, 703, so also is it true in this case, "In a very real sense, therefore, plaintiff was the voluntary participant in the very activity concerning .which it now contends the city should conduct at its peril. * * *"

Respondent further relies upon certain cases cited in the Nelson-Sioux Falls case, wherein the same general rule was announced as adopted by this court. However, those cases are distinguishable from this. case. In the case of Siefert v. City of Brooklyn, 101 N. Y. 136, 4 N. E. 321, 54 Am. Rep. 664, the facts disclosed that the city constructed a drainage sewer of insufficient capacity, and then added more lateral sewers with the result that water overflowed the manholes and inundated plaintiff's property as often as eight or ten times a year. The controlling facts were the same as in the Nelson case. In the case of King v. City of Kansas City, 58 Kan. 334, 49 P. 88, the court determined that the inevitable result of the construction of the sewers was the injury to plaintiff's property. In the case of Tate v. City of St. Paul, 56 Minn. 527, 58 N. W. 158, 45 Am. St. Rep. 501, the instruction of the court therein approved required the jury to find that the injury suffered by the plaintiff from the sewer was "* * * from its nature, is liable to be repeated and continuous, * * *" There was no such showing in this case nor did the court's instruction require any such finding by the jury. In each of the cases, as in the Nelson case, the direct effect of the work was to damage the plaintiff. Here the work was performed for the benefit of the plaintiff and for his advantage. There is not the direct relation between plaintiff's damage and the work that there was in the cited cases. We are of the view that liability in this case must depend upon some established negligence of the city.

That the liability of the city in this case is dependent upon the negligence of the city seems to be established by reason and precedent. Where the city to be held to an absolute liability for any and all damage to a person suffered by reason of water and sewage set back upon his property through a connection with a sanitary sewer and this regardless of negligence or fault on the part of the city,

there would be placed upon the city such an unreasonable burden that its authorities would hesitate to give the city the benefits of a sanitary sewer system. SDC 45.18. On the other hand, as stated in Dillon on Municipal Corporations, 5th Ed., page 3061, "In view of the purpose of sewers, their indispensableness to property owners in cities, their vital relation to the public health, the exclusive nature (as the power is usually conferred) of the municipal authority to construct and to control them, the power and means (where these exist in the municipality) to provide a remedy, and the utter helplessness of the property owner if no remedy is provided, liability to a private action for negligence * * * is doubtless a salutary rule, * * *."

This court in passing upon a state of facts similar to those here presented, in that damages were sought against the city because of backwater from a sanitary sewer, placed a liability of the city upon its negligent acts, and held that if the damage to plaintiff was due to an unusual rainfall and not to negligent acts of the city then the city was not liable. Haley & Lang Co. v. City of Huron, 36 S. D. 6, 153 N. W. 891. See also Power v. Village of Hibbing, 182 Minn. 66, 233 N. W. 597.

We are of the view, therefore, that after plaintiff voluntarily connected her premises with the city sanitary sewer, that the city should not be held absolutely liable as a trespasser should water back up on plaintiff's property through the drain which plaintiff had installed, however, the fact that plaintiff has voluntarily connected her premises with the sewer is no bar to her recovery for damage caused by the set back of water and sewage if such set back is caused by the negligence of the city.

Whether the evidence in this present record is sufficient to support a finding of negligence we express no opinion. The case must be reversed for the error above discussed. If the case is retried and the issue confined to the question of the negligence of the city, the determination of that issue can then be reviewed in its proper perspective.

The judgment appealed from is reversed.

All the Judges concur.