STATE BOARD OF EDUCATION *v.* CITY OF YPSILANTI.

1. CONTRACTS—COLLEGE LAND OUTSIDE CITY LIMITS—SEWER AND WATER SUPPLY.

The term "without prejudice to the rights of either party," contained in order granting writ of mandamus to compel defendant city to connect sewer and water supply to plaintiff's housing projects located outside city limits pursuant to contract entered into some 30 years previously *held*, not to be conditioned upon continued service and would not be satisfied by a temporary furnishing of such service and then turning it off again while the parties litigated the various rights and claims as to sewage capital improvement charge.

2. SAME—CONSTRUCTION AS TO FUTURE NEEDS.

Contract between State college governing body and city wherein college was located with reference to sewers and water service for land outside of the city but adjacent thereto containing provision that the "college will have the right to connect with said sewer without charge, and that the city * * * will extend its water mains to the boundary of the property of the State * * * near where said sewer is located" was not meant to be confined to the needs in existence when made but plainly provided for the future, even to the extent of housing facilities subsequently authorized by statute.

3. MANDAMUS—CITY'S CONTRACT FOR SEWAGE AND WATER SERVICE FOR COLLEGE LAND OUTSIDE CITY.

Contract between State college governing board and city with reference to sewer and water service for college land located without the city limits *held*, a valid and binding contract providing college with a clear legal right to such service to have effective sewage connections made by the city without charge to the college and to include water connections that are turned on and kept on upon peril of disobedience to writ

---

REFERENCES FOR POINTS IN HEADNOTES
[2]  37 Am Jur, Municipal Corporations § 122.
[3]  34 Am Jur, Mandamus §§ 56, 58.

of mandamus, the contract not to be circumvented by so-called sewage capital improvement charge which the college may not pay at all.

4. COSTS—PUBLIC QUESTION—MANDAMUS—CONTRACT FOR SEWER AND WATER SERVICE.

No costs are allowed in mandamus proceeding by State college to compel city to furnish sewage and water service for college lands located outside city limits pursuant to contract relative thereto, a public question being involved.

Original petition by State Board of Education, a State public agency, for writ of mandamus directing the City of Ypsilanti, a municipal corporation, to connect sewer and furnish water to new apartment housing project of Eastern Michigan College located outside city limits. Submitted on order entered July 31, 1957, to show cause by August 12, 1957. (Calendar No. 47,467.) Writ granted August 16, 1957. Opinion filed October 7, 1957.

*Thomas M. Kavanagh,* Attorney General, *Samuel J. Torina,* Solicitor General, and *Maxine Boord Virtue,* Assistant Attorney General, for plaintiff.

*George A. Weins,* City Attorney, for defendant.

VOELKER, J. During the past year or so the Eastern Michigan College at Ypsilanti (formerly Michigan State Normal College) has had under construction 8 new residence apartment buildings, one to be used by the faculty and the others to be used by married students. Plans called for completion and occupancy at the opening of the fall term of school in 1957. These new structures are located on its own property in Ypsilanti township, outside but adjacent to the city limits of Ypsilanti. As the construction sufficiently proceeded the college sought to have these new buildings effectively connected with the city of Ypsilanti water and sewage system and the water

turned on, but this the city refused to do unless the college first paid certain so-called "capital improvement charges" totalling $4,800 for tapping its water and sewage system, as provided by certain new ordinances passed by the city on January 21, 1957. The college conceded it had to pay for water and the water connection, and also the water "capital improvement charge," and tendered its $3,000 check for the latter, but refused to pay the $1,800 sewer "capital improvement charge" sought to be imposed by the city, notifying the city that under a valid preexisting contract between the two it should not and could not be required to pay for any sewage connection. The city then refused to connect, turn on or furnish water or permit sewer connection and this litigation has resulted.

On July 16th the college, through its governing board, filed here its original petition against the city for a peremptory writ of mandamus to compel it to permit connection of said new buildings to the city sewage system without charge, to connect them to the water mains and supply water thereto, and for other relief, alleging in part as follows:

"That on the 7th day of July, A.D. 1926, your petitioner entered into a contract  *  *  *  by virtue of which your petitioner agreed to permit the city to construct a sewer on a part of premises owned by your petitioner in the township of Ypsilanti, Washtenaw county, Michigan, such premises comprising part of the campus of the college then known as Michigan State Normal College and now known as Eastern Michigan College, and such premises being located outside the city limits of respondent herein but lying adjacent thereto.

"That in return for your petitioner's permission to construct a sewer on college land outside the city, respondent herein agreed, *inter alia,* 'that the Michigan State Normal College will have the right to con-

nect with said sewer without charge, and that the city of Ypsilanti will extend its water mains to the boundary of the property of the State board of education near where said sewer is located, and that said water mains will be of sufficient size to meet the needs of the Michigan State Normal College whenever there is a necessity for larger mains.' "

The city answered opposing the petition, among other things admitting the existence of the 1926 contract and other allegations of the college just above quoted, but alleging that both the water and sewer connections had already been made in March, 1957; admitting the tender by the college and the receipt by it of the "water" check; admitting that it contends that it is entitled to a capital improvement charge for both water and sewer connections prior to the time that either are turned on; and alleging that relief in this case was barred by certain chancery litigation pending in the circuit court for Washtenaw county between the city and certain resident taxpayers who sought among other things to restrain the city from furnishing any such facilities to new users beyond the city borders. To this answer the college replied in substance that it sought not only a physical connection of sewage and water, but that it wanted the water turned on and kept turned on; that any sewage connection was manifestly ineffective and valueless unless this was done; and that it was an old customer and not a new one, and that accordingly any chancery suit pending in the Washtenaw circuit court had nothing to do with the present case. To this reply the city in turn replied, claiming among numerous other things that the 1926 contract called only for a connection; that a physical connection had already been made without charge and that thereby both the express and implied terms of that contract were completely satisfied. It also claimed that since the erection of college buildings for residence pur-

poses was only first authorized by law in 1937, that the furnishing of sewage connections without charge to such new facilities could not have been contemplated by the parties in the 1926 contract.

On July 31, 1957, this Court issued its order as follows:

"Let an order issue requiring defendant to connect water service and give permission for sewer connection forthwith, as prayed, or in the alternative, show cause, on or before August 12, 1957, why a writ of mandamus should not issue as prayed."

To this order the city filed an answer alleging in substance that such connections had already been made by plaintiff but that defendant had not furnished any water through these connections except as the college, through its contractors, had made certain illegal and meterless water connections; that the college therefore owed the city for water it had used through these illegal connections; and that on August 7th the city had accordingly shut off the illegal connections and sealed the valves. It further sought a reference to take proofs of many witnesses on various issues raised by it. It also raised questions of fact and law as to the right of the college to erect and rent the residence housing facilities under construction; alleged that the college had asked for the wrong relief and had pleaded the wrong ordinance; alleged that mandamus was not the proper remedy; and concluded with an alternate prayer that the show cause order be dismissed and the writ denied or that such reference to take proofs be ordered.

To this answer to our order of July 31st the college replied "that the need and necessity for such writ is now urgent, dire and desperate in the extreme" and that "unless the writ issues a substantial number of students will be denied access not only to the housing facility but will be denied admission to the college."

It also denied making any illegal water connections anywhere on the campus and alleged that in any event the connections referred to by the city in its answer had to do with an entirely different construction project more than half a mile away.

On August 16, 1957, this Court issued a peremptory writ of mandamus directed to the city and its representatives, commanding it forthwith to connect water service to the new buildings in question; that it forthwith give permission for sewer connection without payment of any capital improvement charge for such sewer; and that it refrain in the future from disconnecting either water or sewer service at such buildings in derogation of the rights of the plaintiff.

Our supporting order on the same date, upon which our writ was based, concluded as follows: "without prejudice to the rights of either party to assert, in other appropriate proceedings, such rights, other than those prayed for by plaintiff in its petition herein, as are referred to in the pleadings or the parties may deem they have against the opposite party." Because of the emergency character of these proceedings, as above noted, we caused such order to enter and writ to issue in advance of the filing of an opinion herein.

By papers filed here since that time the city has shown some disposition to appear to want to avoid the impact of our writ on various grounds: that the language of the writ did not follow that of the above-quoted language of the order; that in view of the language in the order that it apparently felt it could satisfy the writ by turning on the water briefly and turning it off again and then at leisure litigate "without prejudice" its various rights and claims to a sewage capital improvement charge as a condition to continued service; that the copy of the writ as served did not properly conform to the original; that it has ordered but does not have on hand

the necessary water meters to comply with the writ; and finally that it wanted oral argument before this Court on its various claims and objections.

On this subject we will say this and no more : that we believe the city of Ypsilanti and its authorized representatives would be ill-advised to contemplate disobeying the mandate of our writ on any such grounds or any other grounds. The words "without prejudice" in our order are quite common in situations of this kind, and we point out that that portion of our order quoted expressly excepted the relief prayed for by the plaintiff, which we granted.

In our opinion whether the legislature authorized these new buildings in 1937 or whenever has nothing to do with the case. The contract of 1926 was plainly talking about future as well as present needs of the college, and it is equally plain that the contract was not meant to be confined to the needs in existence when it was made.

We meant exactly what we said in our writ. From the record before us we are of the opinion that the 1926 contract is a valid and binding continuing contract between the parties; that a clear legal right based upon that contract resides in the college to have effective sewage connections made without charge; and that a clear legal duty resides in the city to furnish or authorize said sewage connections without charge; and that such a connection must include water (which the college concedes it must pay for) and means that the water must be turned on by the city and kept on, upon peril of disobedience of our writ. We further hold that the college is entitled to water and sewage connections and continuing service without paying any sewer capital improvement charge; and that the plain intendments of the contract of 1926 between the parties cannot be circumvented by the device of a so-called sewage capital improvement charge. We finally hold that the col-

lege is not obligated or required to pay the city any such charge nor may it pay any such charge at all.

Since a public question is involved, no costs are allowed.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, KELLY, CARR, and BLACK, JJ., concurred.