365 N.W.2d 405 (1985)
219 Neb. 575
C. George BLEICK, Appellant,
v.
CITY OF PAPILLION, Appellee.
No. 83-938.
Supreme Court of Nebraska.
March 29, 1985.
Gregory Garland of Garland, Pettis & Wills, Omaha, for appellant.
Michael N. Schirber of Schirber Law Offices, P.C., Papillion, for appellee.
KRIVOSHA, C.J., and BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.
BOSLAUGH, Justice.
The plaintiff, C. George Bleick, is a resident of Sarpy County, Nebraska. His residence property is located outside the city limits but within the zoning jurisdiction of the city of Papillion, Nebraska (City), and within the boundaries of Sanitary and Improvement District No. 108 (S.I.D. No. 108).
*406 On March 15, 1977, S.I.D. No. 108 entered into a contract with the City for water and sewer service to be provided to the S.I.D. by the City at rates to be prescribed by ordinances of the City, but not to exceed twice the fees charged to residents of the City. The contract provides for payment by the district of the amounts due under the contract, or direct billing to the "users." The contract provides for a term of 20 years, with automatic renewal for successive terms of 20 years each unless one of the parties to the contract advises the other of its desire not to do so at least 6 months prior to the end of the term. Under the ordinances now in effect the water service fees are twice the rate charged to residents of the City, and sewer usage fees are one and one-half times the rate charged to residents.
This action was commenced April 7, 1981, on behalf of the plaintiff and, by stipulation, all other persons similarly situated, to enjoin the City from collecting the amounts due under the contract. The plaintiff's theory of the case is that the rate which the City has fixed is unreasonable, arbitrary, and unfairly discriminatory, since the higher fees charged to the S.I.D. are based solely upon the fact that "users" within the S.I.D. are nonresidents of the City.
Both parties filed motions for summary judgment. The motions were submitted upon a stipulation of facts, documentary evidence concerning the contracts between the City and the S.I.D. and other sanitary and improvement districts, and the deposition of the city administrator of the City. The trial court sustained the motion of the defendant City and dismissed the petition. The plaintiff has appealed.
The authority for the City to enter into a contract to furnish water and sewer service beyond its limits is set out in Neb.Rev.Stat. § 19-2701 (Reissue 1983), which provides:
A city of the first or second class may enter into a contract or contracts to sell electric, water, or sewer service to persons beyond the corporate limits of such a city when, in the judgment of the mayor and council of such a city not having a board of public works or of its board of public works in such a city having such board, it is beneficial to any such city to do so. No such contract shall run for a period in excess of twenty-five years. Such a city is hereby authorized and empowered to enter into contracts for the furnishing of electric service to persons, firms, associations, and corporations beyond the corporate limits of such a city.
The authority for the S.I.D. to enter into a contract for purchase of water and sewer service for resale to the residents of the district is set out in Neb.Rev.Stat. § 31-740 (Reissue 1984), which provides in part: "The district may ... contract with corporations or municipalities for disposal of sewage and use of existing sewerage improvements, and for a supply of water for fire protection and for resale to residents of the district."
The furnishing by a city of water or sewer service to persons outside the corporate limits of the city is contractual and permissive and not a duty imposed upon the city by statute. Burger v. City of Beatrice, 181 Neb. 213, 147 N.W.2d 784 (1967). Statutory provisions such as Neb. Rev.Stat. § 16-681 (Reissue 1983), which requires the city to furnish service "subject to reasonable rules and regulations," apply only to residents of the city.
The plaintiff relies upon McGinley v. Wheat Belt P.P. Dist., 214 Neb. 178, 332 N.W.2d 915 (1983), as authority in support of his contentions. The McGinley case involved a dispute between customers within the boundaries of the district. The defendant district in that case attempted to distinguish between "old" and "new" customers and charge different rates accordingly. The case has no application here.
The plaintiff also relies upon City of Texarkana v. Wiggins, 151 Tex. 100, 246 S.W.2d 622 (1952), a 5 to 4 decision of the Supreme Court of Texas, in support of his contentions. We have examined the opinion in that case and do not consider it controlling here. Rather, we believe the *407 law as stated in the dissenting opinion is correct.
The great majority of the cases support the rule that public utilities generally may discriminate, in respect to rates, between consumers within and those outside the municipalities primarily served. See Annot., 4 A.L.R.2d 595 (1949).
A municipally owned waterworks system supplying water without its corporate limits may, generally, charge more for that service than is charged users of the water service who reside within the corporate limits.... The fact that residents of the municipality have borne the cost of establishing or financing the system will justify charging a higher rate to nonresidents.
64 Am.Jur.2d Public Utilities § 120 at 647 (1972).
As the opinion in the Burger case stated, a city furnishing utility services to persons outside the limits of the city is engaged in a business enterprise. Here, the City and the S.I.D. dealt at arm's length, and we know of no reason why their contract should not be enforced as written. See City of Phoenix v. Kasun, 54 Ariz. 470, 97 P.2d 210 (1939).
The rates fixed by the City are uniform as to residents and uniform as to nonresidents. The City has no assurance that the S.I.D. will continue to purchase service in the future, and whatever expense or improvement that may be necessary in the facilities of the City will be solely the responsibility of the City.
There are additional reasons why the plaintiff could not prevail in this action. The contract in question is between the City and the S.I.D. The plaintiff is not the real party in interest, and the S.I.D., an indispensable party, was not joined. See, Neb.Rev.Stat. §§ 25-301 and 25-323 (Reissue 1979); Redding v. Gibbs, 203 Neb. 727, 280 N.W.2d 53 (1979); Johnson v. Mays, 216 Neb. 890, 346 N.W.2d 401 (1984).
The judgment of the district court is affirmed.
AFFIRMED.
KRIVOSHA, Chief Justice, concurring in the result.
I concur in the result reached by the majority in this case. I believe, however, that once the majority determines that the appellant is not the real party in interest in this case, anything more we say or do is mere dictum. A similar, though not exact, issue was previously presented to this court in Evans v. Metropolitan Utilities Dist., 184 Neb. 172, 166 N.W.2d 411 (1969). In affirming the action taken by the district court in sustaining a demurrer and dismissing the action, we observed at 174, 166 N.W.2d at 413:
[A] real party in interest is the person "entitled to the avails of the suit," that the person who is asserting the cause of action has a "remedial interest which the law of the forum can recognize and enforce," and that he has a "justiciable interest in the subject matter in litigation, either in his own right or in a representative capacity."
We then observed in Evans that the plaintiff had not made demand upon M.U.D. before filing suit in his own name. In noting that this failure was critical, we said at 174-75, 166 N.W.2d at 413: "The requirement of a demand to sue and a subsequent refusal or a waiver of demand by an indication on the part of the public corporation of an intent not to sue are conditions precedent to a representative or derivative suit on behalf of public corporations." We concluded by noting in Evans at 175, 166 N.W.2d at 413-14:
It seems to be quite obvious that plaintiff and the others in his class have no standing as parties to bring this suit for the simple reason that they cannot be considered real parties in interest. As far as this action is concerned they are not sui juris and neither do they have any justiciable interest in this controversy at the present time because the action exists on the part of M.U.D., and M.U.D. has not refused to bring it. Further, of course, they have no interest or right to *408 the avails of any suit of this nature, since M.U.D. itself would be the proper party plaintiff and would be entitled to all avails in the event of the successful determination that L.B. 425 is unconstitutional.
It seems clear to me that a similar situation exists in the instant case. The contract which is challenged is not a contract between Bleick and the city of Papillion but, instead, is one between the S.I.D. and the city of Papillion. Furthermore, Bleick's claim is not to the effect that his rate alone is illegal but, rather, that the rate for all customers residing within the S.I.D. is illegal. It is therefore of a derivative nature, though not so pleaded. If, indeed, the contract is illegal as contended for by Bleick, then he must first demand that the S.I.D. bring suit to have the contract set aside. It seems clear to me that only in the event the S.I.D. refuses to bring such suit does Bleick have standing. I believe that is exactly what the majority suggests, and with which I am in complete agreement. I do not understand, however, how we can determine the issues between parties once we recognize that Bleick does not have standing.
CAPORALE, J., joins in this concurrence.