**BLUE FOX BAR, INC., Plaintiff and Appellant,**

v.

**CITY OF YANKTON, Defendant and Appellee.**

Nos. 15721, 15739.

Supreme Court of South Dakota.

Argued Oct. 5, 1987.

Decided June 8, 1988.

Jerry L. Pollard of Light Law Offices, Yankton, for plaintiff and appellant.

Steven M. Johnson of Brady, Kabeiseman, Reade & Johnson, Yankton, for defendant and appellee.

GERKEN, Circuit Judge.

Blue Fox Bar, Inc. (Blue Fox) appeals from the trial court's judgment for the City of Yankton and from the court's denial of Blue Fox's motion for a new trial. The City of Yankton has filed a notice of review from the trial court's order denying the city's motion for summary judgment. We affirm.

### FACTS

In 1967, City of Yankton, pursuant to its plans and specifications, had a lift station designed and constructed on the east side of Yankton. Originally, this lift station served a small area of Yankton, but by 1984, it served the whole area east and northeast of Yankton and an area outside the Yankton city limits.

In 1978 and 1980 this lift station underwent certain modifications. In 1978 an alarm circuit was added to the lift station. This alarm circuit was tied into the lab at the sewage treatment plant and enabled the lift station to be monitored in case a problem developed. In 1980 the sewer line

from the Human Services Center was re-routed through this lift station and a third pump was added to handle the increased volume of sewage.

In 1979 Blue Fox purchased the Super 8 Motel. Although outside the city limits, the Super 8 Motel was provided water and sewer services by the City of Yankton. Water rates for those outside the city limits were double the rates of those paid by residents of Yankton. Sewer rates were the same. The hookup by the Super 8 to the city sewer system was authorized by the Yankton city commission. The Super 8 Motel was serviced by the lift station located on the east side of Yankton.

On September 5, 1984, sewage backed up in the basement of the Super 8 Motel. Originally believing that the problem was caused by blockage within the motel, one of Blue Fox's employees attempted to remedy the situation. When his attempts to rectify the situation failed, a plumber was called. The plumber established that the source of the problem was outside the motel and notified the city. It was discovered that the lift station which serviced the Super 8 was not operating. The cause of the problem was electrical in nature; a breaker to the control panel was either in the "off" or "tripped" position. Without power to the control panel, the alarm system, which was added in 1978, failed to work. Once the circuit breaker was turned to the "on" position, the system functioned properly.

Blue Fox started this action to recover damages sustained by the Super 8 Motel as a result of the sewage backup. In its complaint, Blue Fox alleged causes of action in negligence, strict liability, and breach of contract. The City of Yankton moved for summary judgment alleging that it was immune from such suit because of the doctrine of sovereign immunity. The trial court denied the motion finding that the complaint stated a cause of action upon which relief could be granted. The case was tried before a jury in January 1987. At the close of the City of Yankton's evidence, the trial court dismissed Blue Fox's cause of action in contract and strict liability. The jury found for the City of Yankton on the claim of negligence. The court denied Blue Fox's motion for a new trial.

On appeal, Blue Fox asserts that the trial court erred by dismissing its causes of action in contract and strict liability, by refusing to instruct the jury on the doctrine of res ipsa loquitur, and by refusing its motion for a new trial. In its notice of review the City of Yankton contends that the trial court's refusal to grant summary judgment was improper. We address this issue first due to its possible effect on Blue Fox's appeal.

## DECISION

DOES THE DOCTRINE OF SOVEREIGN IMMUNITY PRECLUDE BLUE FOX FROM MAINTAINING A CAUSE OF ACTION AGAINST THE CITY OF YANKTON?

UNDER THE FACTS AND CIRCUM-STANCES OF THIS CASE, WE HOLD THAT IT DOES NOT.

■ Sovereign immunity is the principle that the state cannot be sued unless it has given its consent or has otherwise waived its immunity. *City of Rapid City v. Boland,* 271 N.W.2d 60, 64 (S.D.1978); *Cuka v. State,* 80 S.D. 232, 122 N.W.2d 83, 85 (1963). When acting within its governmental powers, a municipal corporation is acting as an agent for the state and partakes in its sovereignty in respect to its immunity. *City of Rapid City v. Boland, Id.; Conway v. Humbert,* 82 S.D. 317, 145 N.W.2d 524, 526 (1966). However, a municipality is liable in the same manner as an individual or corporation for torts in its corporate or proprietary capacity. *Sioux Falls Construction Co. v. City of Sioux Falls,* 297 N.W.2d 454, 457 (S.D.1980); *Bucholz v. City of Sioux Falls,* 77 S.D. 322, 91 N.W.2d 606, 608 (1958).

■ Governmental immunity is not a defense to a claim against the state for contractual liability arising out of either

governmental or proprietary operations. *Zynda v. Michigan Aeronautics Commission,* 372 Mich. 285, 125 N.W.2d 858, 860 (1964); *Department of Parks and Recreation v. West-A-Rama, Inc.,* 35 Cal.App.3d 786, 111 Cal.Rptr. 197, 202 (1973). Such contractual obligations would be deemed a waiver of any immunity. Therefore, the trial court properly determined at the time of the motion for summary judgment, that Blue Fox's cause of action in contract sufficiently stated a claim upon which relief could be granted.

■ The trial court determined that the City of Yankton was operating in a corporate or proprietary function by constructing and maintaining a sewer system, and, therefore, a cause of action existed in tort against the City of Yankton. This court, in citing to the case of *State v. Board of Commissioners,* 53 S.D. 609, 222 N.W. 583 (1928), has previously stated:

> Municipal Corporations enjoy their immunity from liability for torts only in so far as they partake of the state's immunity, and only in the exercise of those governmental powers and duties imposed upon them as representing the state. In the exercise of those administrative powers conferred upon, or permitted to them solely for their own benefit in their corporate capacity, whether performed for gain or not and whether of the nature of a business enterprise or not, they are neither sovereign nor immune. They are only sovereign and only immune in so far as they represent the state. They have no sovereignty of their own, they are in no sense sovereign per se.

*Oien v. City of Sioux Falls,* 393 N.W.2d 286, 291 (S.D.1986). It is well established that it is the nature of the duty performed which determines liability. *Conway v. Humbert, supra* at 527; *Bucholz v. City of Sioux Falls, supra* at 610. In constructing and maintaining a sewer system, the City of Yankton was acting pursuant to SDCL 9–48–2.* This statute does not create, or impose, any duties upon the City of Yankton. In *Jerauld County v. Saint Paul–Mercury Indemnity Co.,* 76 S.D. 1, 71 N.W.2d 571 (1955), this court considered whether the operation of a county hospital was a proprietary or governmental function. In establishing that such activity was governmental, the court stated:

> SDC Supp. 50.0101 makes it the duty of the county to relieve and support all poor and indigent persons having a lawful poor relief settlement therein. In this general duty is included, among other things, the specific duty to provide hospitalization, medical care and treatment. In the acceptance of the duty the county has no choice. (citations omitted)

71 N.W.2d at 574.

In the present case, the City of Yankton had no duty to construct or maintain a sewer system either within the municipality or outside its corporate limits. However, by undertaking the construction and maintenance of a sewer system, the city acted in a proprietary capacity and, therefore, may be held liable in tort for wrongs committed in its exercise of this function.

## II.

### DID THE TRIAL COURT ERR WHEN IT DISMISSED PLAINTIFF'S CAUSE OF ACTION IN CONTRACT?

### WE HOLD THAT IT DID NOT.

Blue Fox claims that the Yankton city commission's ratification of an agreement

---

* SDCL 9–48–2, as amended in 1982, provides: Every municipality may establish and construct main, trunk and service sewers, and septic or sewage treatment plants, drains and manholes either within its corporate limits or within ten miles of its corporate limits; may appropriate funds and levy taxes to accumulate funds for such purposes; may establish sewer districts as provided by this title; may acquire any sewer, drain, or system of sewage and drainage already established and constructed; and may acquire land within or without the municipality for a septic or sewage treatment plant or outlet to any main sewer, and may assess the cost thereof with cost of any necessary extension or connection of such main sewer to all the property within the sewer district benefited as provided by this title. The proceeds of any taxes levied for the accumulation of funds under this section shall be placed in a separate fund which may not revert at the end of the fiscal year. The amount of the fund may never exceed an amount equivalent to ten mills of the taxable value of all property within the municipality. The fund shall be established by a resolution adopted pursuant to chapter 9–19.

to provide sewer and water service to the Super 8 Motel at a stated rate created an implied contract between the parties. At the trial, the only evidence offered to show the existence of such a contract was a brief bit of testimony by Eugene Hoag, the Director of Public Works in Yankton. Hoag's testimony merely revealed that the City agreed to provide sewer and water services to the Super 8, and that the Super 8 would pay a sewer rate the same as the residents of Yankton. For the water service, however, the Super 8 would pay double the rate which residents paid. No further terms of the alleged contract were ever provided. The trial court held that the city commission's ratification of the agreement to provide water and sewer service at a specified rate was merely because of the cost of providing that service and was at the request of the Super 8. It did not constitute a contract.

It is well established that a municipal corporation has only such powers as those granted to it by the constitution or statutes of this state, or such as incidental thereto. *Schryver v. Schirmer,* 84 S.D. 352, 171 N.W.2d 634, 635 (1969); *City of Watertown v. Meseberg,* 82 S.D. 250, 144 N.W.2d 42, 44 (1966). Blue Fox has indicated in its brief that, pursuant to SDCL 9–48–32, the City of Yankton had the power to enter into a contract regarding sewer service. SDCL 9–48–32 provides:

> A municipality wherein sewage treatment or septic plant is maintained *shall have power to contract for the privilege of connecting* to said plant for the purpose of treating or disposing of private sewage or industrial waste originating within the municipality or within one mile of the corporate limits, provided said plant has capacity over the requirements of the municipality for handling such sewage or industrial waste. (emphasis added)

SDCL 9–48–32 clearly refers to the "power to contract." One of the primary rules of statutory construction is that words and phrases should be given their plain meaning and effect. *Matter of Aiken,* 296 N.W.2d 538, 540 (S.D.1980); *Board of Regents v. Carter,* 89 S.D. 40, 228 N.W.2d 621, 624–625 (1975). However, when possible, statutes are read to give effect to all provisions. *Hartpence v. Youth Forestry Camp,* 325 N.W.2d 292, 295 (S.D.1982); *State v. Heisinger,* 252 N.W.2d 899, 903 (S.D.1977). The "power to contract" language in SDCL 9–48–32 is clearly qualified by the phrase which immediately follows, "for the privilege of connecting." This language implies that the only contractual right that could be granted to the Super 8 is the "benefit" of connecting to the sewer line. It is not every agreement that results in a binding, legally enforceable contract. *Mitzel v. Hauck,* 78 S.D. 543, 105 N.W.2d 378, 380 (1960). An agreement must contemplate assumption of legal rights and duties if it is to result in a binding, legally enforceable contract. *Id.*

This court has stated that no one has any vested rights in the use of sewers nor can the city grant such a vested right. *Ericksen v. City of Sioux Falls,* 70 S.D. 40, 14 N.W.2d 89, 95 (1944). In *Ericksen, supra,* this court considered whether the City of Sioux Falls could enter into a contract with John Morrell & Company to dispose of John Morrell's industrial sewage from its plant in the city of Sioux Falls. In determining that the city did not have the right to enter into a contract regarding the sewers, the court stated:

> The supervision and regulation of the sewers is a police function of the city. Therefore, in granting permission for the use of the sewers in the first instance and for the continuing use thereof, the city must at all times retain control, and any attempt by way of contract to deprive the city of that control is void. The police power of the city cannot be bargained away by contract, but must at all times be available for use to meet such public needs as may arise. McQuillan, Municipal Corporations, 2d Ed Rev., §§ 393, 1564.

14 N.W.2d at 95.

It should be noted that in *Ericksen, supra,* SDCL 9–48–32 (then SDC 45.1811) was

inapplicable because it only pertained to sewage originating within one mile of the municipality and not sewage originating within the city limits. Although SDCL 9–48–32 was later amended to include sewage originating within the city, this would not change the rationale expressed in *Ericksen, supra*. SDCL 9–48–32 merely gives the city the right to allow a party to use the sewer system at a stated rate. Here, the city commission's ratification of an agreement to allow the Super 8 to hook up to the sewer line at a specified rate created no duties, rights or obligations on either party. Therefore, the trial court was correct in its determination that no contract was formed under the facts as presented.

Blue Fox contends that *Shann, supra,* should be distinguished because the *Shann* case dealt with sewer services within a municipality, and, in this case sewer services were provided outside of city limits. This contention is without merit. The court in *Shann, supra,* made no distinction between sewer services provided within city limits and those provided outside city limits. Its concern was with the burden that would be placed upon the city if the city were held to absolute liability. This burden would be the same regardless of where the sewer system was extended. Therefore, the trial court's dismissal of Blue Fox's cause of action in strict liability was proper.

### III.

### DID THE TRIAL COURT ERR WHEN IT DISMISSED PLAINTIFF'S CAUSE OF ACTION FOR STRICT LIABILITY IN TORT?

### WE HOLD THAT IT DID NOT.

■ In the case of *Shann v. City of Rapid City,* 72 S.D. 418; 35 N.W.2d 399 (1948), this court considered whether a city could be held absolutely liable for the backup of sewage from a sanitary sewer onto a plaintiff's property. In holding that such liability could not be imposed, the court stated:

> Were the city to be held to an absolute liability for any and all damage to a person suffered by reason of water and sewage set back upon his property through a connection with a sanitary sewer and this regardless of negligence or fault on the part of the city, there would be placed upon the city such an unreasonable burden that its authorities would hesitate to give the city the benefits of a sanitary system.

35 N.W.2d at 401. The court in *Shann, supra,* also stated that if liability were to attach under the facts of the case, it must depend upon some established negligence of the city. *Id.* 35 N.W.2d at 400–401.

### IV.

### WAS THE TRIAL COURT'S REFUSAL OF BLUE FOX'S INSTRUCTIONS ON RES IPSA LOQUITUR PROPER?

### WE HOLD THAT IT WAS.

■ In refusing to give Blue Fox's proposed instruction on the doctrine of res ipsa loquitur, the trial court relied on the case of *Shipley v. City of Spearfish,* 89 S.D. 559, 235 N.W.2d 911 (1975), which held that it was not proper for the trial court to give an instruction on res ipsa loquitur where damages were sustained due to an overflowing sanitary sewer. In *Shipley, supra,* the court reiterated the established rule that one of the requirements of res ipsa loquitur is that "the instrumentality which caused the injury must have been under the full management and control of the defendant or his servants." *Id.* 235 N.W.2d at 913. As it pertains to a sewer system, the court found that this requirement could not be met and stated:

> In giving the Instruction # 13 to the jury on res ipsa the trial court was allowing the jury to decide whether or not "the sewer by which damage to the plaintiff was proximately caused, was in the possession or under the exclusive control of the Defendant at all times material to

this action." In view of the case law on the subject and the testimony in the record an affirmative finding on the question would have been entirely unsupported. The trial record is clear that Defendant's sewer system is not under its exclusive control. It is easily accessible. Any homeowner whose own plumbing feeds into it thereby has access to it. A passerby can gain access through unsecured manholes in the public streets and on Halloween and at other times, the record shows, manhole covers have been removed and the manholes left open. 235 N.W.2d at 913.

In the case at bar, Blue Fox's witness, Gary Klutz, testified that the pump motors were protected against overload current conditions. If a foreign object was contained in the sewage and either jammed or slowed down a pump, the circuit breaker would trip. After this occurred the object could pass through the system. This testimony clearly indicates that the electrical failure could have been caused by an instrumentality that this court has already deemed not to be within the exclusive control of a city. The trial court's refusal to give an instruction on res ipsa loquitor under these circumstances was proper.

Since there was no error in the trial court's decision to dismiss the causes of action in contract and strict liability, or in refusing to give the proposed instruction on res ipsa loquitor, and the jury verdict was not contrary to the evidence presented, the trial court's refusal to grant a new trial on this matter was proper.

The judgment of the trial court is affirmed.

WUEST, C.J., and MORGAN, J., concur.

HENDERSON and SABERS, JJ., dissent.

GERKEN, Circuit Judge, for MILLER, J., disqualified.

HENDERSON, Justice (dissenting).

In joining Justice Sabers' dissent, it escapes logic and reason that a municipality can reap the benefits of an agreement and avoid its burdens. A city's furnishing of water or sewer service outside city limits is contractual in nature, and such a contract should be enforced according to its terms. *Bleick v. City of Papillion*, 219 Neb. 574, 365 N.W.2d 405 (1985).

Where political subdivisions of this state openly contract with the private sector, should they not be held to their contract? Must they not maintain a credible posture? If they can hide behind their governmental veil, they become men of commerce only when it is to their liking. This cannot be.

Here, the City of Yankton's own director of public works testified that services were provided under a contractual agreement with the Super 8. "It is settled law in South Dakota that a party to a lawsuit cannot claim the benefit of a version of relevant facts more favorable to his own contentions than he has given in his own testimony." *Connelly v. Sherwood*, 268 N.W.2d 140, 141 (S.D.1978). *See also Swee v. Myrl & Roy's Paving, Inc.*, 283 N.W.2d 570 (S.D.1979).

SABERS, Justice (dissenting).

Blue Fox Bar did not receive a fair trial because the trial court dismissed the breach-of-contract claim against the City of Yankton.

The trial court erred in dismissing the breach-of-contract claim where the City's director of public works Eugene Hoag testified to the existence of a contractual agreement, including specific water and sewer rates.

Q. (By Plaintiff's Counsel) ... At that time in 1984 the Super–8 was outside the city limits of Yankton; is that correct?

A. Yes, that's correct.

Q. And that was under a contractual agreement with the Super–8, since they were outside the city limits the Super–8 paid a double water rate based on gallonage, or paid twice as much for the gallonage as somebody in town would?

A. Yes. The water rate was based on double what it would have been had they been inside the city limits.

Q. And that was so that the City would recover the funds that it had put into extending service beyond the city limits; is that correct?

A. Yes. Everyone that has a contract with the City for being outside the City pays double water rates; a policy of the City Commission.

Q. And it was the City Commission that entered into that agreement?

A. Yes it was.

Q. And that included sewer services; correct?

A. The sewer rates were the same as a customer inside the city limits, because everyone on the sewer system has to be the same rate. Just the water was the double rate.

Q. But the agreement was to provide sewer and water services?

A. Yes it was.

The above testimony clearly shows proof of a contract. As appropriately stated by plaintiff's counsel,

"Four to six inches of raw sewage represents the breach, and the damages were clearly foreseeable. This Court, nor any court, can equitably justify a municipality entering into agreements, reaping the benefits and avoiding the burdens."

Citing *State Board of Education v. City of Ypsilanti*, 350 Mich. 5, 85 N.W.2d 94 (1957); *Bleick v. City of Papillion*, 219 Neb. 575, 365 N.W.2d 405 (1985); *Trimont Land Co. v. Truckee Sanitary Dist.*, 145 Cal.App.3d 330, 193 Cal.Rptr. 568 (3d Dist. 1983). Although factually distinguishable these cases recognized that "agreements" with political subdivisions must contain burdens along with benefits for the political subdivision.

The reliance of the majority opinion on *Ericksen v. City of Sioux Falls*, 70 S.D. 40, 14 N.W.2d 89 (1944), is somewhat misplaced. Plaintiff's counsel argues that as applied to this case *Ericksen* is inherently wrong and against public policy. He also distinguishes *Ericksen* because it turns on the issue of the health and welfare of the residents, who could have been denied proper services in order to fulfill the contract with Morrells (because of lack of capacity to provide services to both). Additionally, he argues *Ericksen* differs from the present case because capacity is not at issue. The instant case does not turn upon police powers or contracting away control, but involves only the safety and well-being of the contracting party and its customers.

The majority opinion holds that:

SDCL 9-48-32 merely gives a city the right to allow a party to use the sewer system at a stated rate. Here, the City Commission's ratification of an agreement to allow the Super-8 to hook up to the sewer line at a specified rate created no duties, rights or obligations on either party.

To hold that no duties, rights or obligations on either party were created even appears inconsistent with the statement in the majority opinion: "... by undertaking the construction and maintenance of a sewer system, the City acted in a proprietary capacity, and therefore, may be held liable in tort for wrongs committed in its exercise of this function." If the City is liable to its customers for negligence, I fail to see why it cannot be liable to its customers for breach of contract.

SDCL 9-48-32 provides:

A municipality wherein a sewage treatment or septic plant is maintained *shall have power to contract for the privilege of connecting* to said plant for the purpose of treating or disposing of private sewage or industrial waste originating within the municipality or within one mile of the corporate limits, provided said plant has capacity over the requirements of the municipality for handling such sewage or industrial waste. (emphasis added)

The statute itself refers to and eliminates the argument over capacity. Despite that,

the majority opinion concludes that the "'power to contract' language in SDCL 9–48–32 is clearly qualified by the phrase which immediately follows, 'for the privilege of connecting.'" Unlike the majority I find nothing within the statute, which statute did not apply to *Ericksen*, to preclude a breach-of-contract claim. If the legislature so intended, it would have been a simple matter to expressly provide that no liability shall result from any breach of said contract.

Accordingly, I respectfully submit that Blue Fox Bar did not receive a fair trial for this reason.