HIGH–GRADE OIL COMPANY, INC.,
a/k/a High Grade Oil Company, Inc.,
and James R. Donovan, Plaintiffs and
Appellants,

v.

Maynard SOMMER, Defendant
and Appellee.

No. 12868.

Supreme Court of South Dakota.

Argued April 21, 1980.

Decided Aug. 20, 1980.

Acie W. Matthews, of Willy, Pruitt, Matthews, Hurd, Farrell, Frankman & Johnson, Sioux Falls, for plaintiffs and appellants.

Robert D. Hofer, of Riter, Mayer, Hofer & Riter, Pierre, for defendant and appellee.

MORGAN, Justice.

Appellants filed suit against appellee as a joint tort-feasor for his part in the design and construction of a stretch of U.S. Highway 12 upon which a collision occurred wherein one person was seriously injured.

The trial court granted summary judgment followed by summary judgment nunc pro tunc. We affirm.

The facts of the collision are immaterial except that (1) James R. Donovan, in the course of employment by High-Grade Oil Company, Inc., lost control of the vehicle he was driving on a reverse "S" curve which appellants now claim was negligently designed or modified by appellee or with his approval, and (2) Donovan's vehicle crossed into the oncoming traffic lane and collided with another vehicle in which Alice Harms was a passenger.

As a result of the accident, Alice Harms was seriously injured. Mrs. Harms filed suit against appellants for damages which resulted from the injuries she received in the accident. Appellants attempted to join the State of South Dakota through third-party proceedings, but that motion was denied on the grounds of governmental immunity, and appellants agree that such dismissal was proper.

Appellants then settled the claim with Mrs. Harms when she signed a release of all claims for a substantial monetary consideration. Appellants then filed suit against appellee as a joint tort-feasor whereby appellants alleged that appellee was legally liable to contribute to the settlement. Appellants alleged that the accident occurred through no fault of theirs, but rather that it occurred due to the negligent acts and omissions of appellee since the reverse "S" curve was without a minimum tangent as required by custom and the applicable road standards for safety.

At the time of the accident appellee was the Director and State Highway Engineer of the Division of Highways for the State of South Dakota. Part of his responsibility in that position was to design or approve the design of highway systems for the state. He also approved modifications and repairs in the highway system.

The pertinent part of appellee's answer stated that the proper party was the State of South Dakota, not appellee; he also pleaded governmental immunity; he also stated that he was not personally liable, that any possible negligence on his part was actually the negligence of the state.

Appellee made a motion to dismiss the complaint. The trial court, treating the motion as a motion for summary judgment, granted summary judgment, after which it granted summary judgment nunc pro tunc. On appeal the two judgments are being considered as one judgment, as per agreement by the parties.

■ This brings us to the first issue we must decide, whether this is an action against an individual or against the state. Obviously the state is not a nominal party, but it is settled law that in an action against an officer of the state where the state is the real party against which relief is sought, and where a judgment for the plaintiff, although nominally against the officer as an individual, could operate to subject the state to liability, the action is to be deemed against the state and is not maintainable unless the state has consented to be sued. 72 Am.Jur.2d States, Etc., § 108 (1974). See also: *White Eagle Oil & Refining Co. v. Gunderson*, 48 S.D. 608, 205 N.W. 614 (1925).

■ Appellants urge that under our holding in *White Eagle* the action is maintainable against the officer as an individual. There we said that "those actions at law or suits in equity maintained against defendants, who while claiming to act as officers of the state, violate and invade the personal and property rights of the plaintiffs *under color or authority unconstitutional and void*, are not suits against the state." 48 S.D. at 617, 205 N.W. at 617 (emphasis added). But appellants misapprehend the meaning of the phrase emphasized above. Counsel urges that because appellee violated certain safety standards with respect to the minimum tangent on a "S" curve, he acted outside the scope of his employment and his actions were thus void. We cannot agree. Under Article XIII, § 9 of our state constitution, construction and maintenance of public highways is a function of state government. The legislature by statute has vested the authority for such construction

and maintenance in the Board of Transportation.[1] Appellee is an employee of the Department of Transportation, the operational arm of the Board. Any action on his part in the performance of his duties, whether negligently done or otherwise, clearly is constitutional and is not void. In *White Eagle*, supra, the officers were sued in their official capacities, but the claim was that their actions were premised on an unconstitutional statute.

■ Considering then, as we must, that this is an action against the state, we next review appellants' attack on the doctrine of "governmental" or "sovereign immunity," which terms are interchangeable. In our discussion of sovereign immunity we confine ourselves entirely to the review as the doctrine applies to the state level of governmental activities as opposed to municipal, county, or township levels. This court has recognized the rule that as to the state there is no distinction between governmental and proprietary functions. Judge Campbell in *State v. Board of Commissioners*, 53 S.D. 609, 632–633, 222 N.W. 583, 593 (1928), after a lengthy and excellent treatise on the concept of sovereign immunity, stated:

> The purpose and the sole purpose of government in this state, in its actual operation, is to carry out the powers and perform the functions intrusted to it by the people of this state, and there is not, legally speaking, any distinction in the capacity in which the government of the state acts, or in the essential nature of its operation as a matter of law, in the performance of any one function intrusted to it by the people as compared with the performance of other functions so intrusted. We therefore hold that there cannot be successfully maintained, as a matter of law, in this state, under the circumstances here involved, a distinction between what has been frequently denominated as a "sovereign" and "non-sovereign" capacity of the state . . . .

We further confine our review to immunity as regards actions at law for tort which is the area within which this lawsuit falls.

While acknowledging our previous holding in *Conway v. Humbert*, 82 S.D. 317, 145 N.W.2d 524 (1966), appellants urge us nevertheless to overrule these precedents and follow the lead of Wisconsin and some other courts and abrogate the doctrine by judicial decree. In *Conway* this court said: "The people express their sovereign will in the formulation of public policy and law through the medium of the legislature and that branch of government in this field should be permitted to function freely without judicial interference." And further "[f]or reasons stated, we adhere to the opinion that if there is to be a departure from the rule of governmental immunity it should result from legislative action." 82 S.D. at 324 and 325, 145 N.W.2d at 529.

We are not disposed to overrule this precedent for several reasons. First, while we agree that the doctrine is "judge made law," we are reminded that it is a doctrine of long standing; so long in fact, that it antecedes the federal and state constitutions. Our state constitution took cognizance of it when it was provided in Article III, § 27 that "[t]he Legislature shall direct by law in what manner and in what courts suits may be brought against the state." Nebraska has a similar constitutional provision. The Nebraska Supreme Court has said: "This provision of the Constitution is not self-executing. Legislative action is necessary to make it available." *Gentry v. State*, 174 Neb. 515, 518, 118 N.W.2d 643, 645 (1962).

Our legislature has provided for suits against the state in actions other than tort, e. g.: SDCL 31–2–34 et sequitur—Action against state on construction contract; SDCL 21–32–8 et sequitur—State as defendant in actions involving property (adverse claims, adverse possession and lien foreclosures on real and personal property).

■ Appellants next urge us to hold that the doctrine of sovereign immunity is unconstitutional as a denial of due process,

1. See SDCL 31–4–14.

equal protection, and a violation of our state constitution, Article VI, § 20, the right to remedy for injury done. To say that sovereign immunity is a constitutional violation is on its face an incongruity. In our republican form of government the people are the sovereign. The rights granted under the constitution are such rights as the sovereign grants. The sovereign can retain rights or qualify the grant. As we have noted above the doctrine of sovereign immunity predates our constitution. Under Article III, § 27 of our state constitution the grant of the right of action against the sovereign is a qualified right.

Nor are we persuaded by appellants' argument that the design of a highway system which is obviously or inherently dangerous is an exception to the governmental immunity rule. The authority cited to support this argument can be distinguished from this case. South Dakota has not adopted a state tort liability act as has Hawaii, nor abrogated sovereign immunity as has California. We therefore decline to follow the decisions cited from those states.

 Finally, we look to appellants' most persuasive argument, that the purchase of liability insurance constitutes a waiver of immunity, particularly as to officers and employees of the state. The record reflects that there are two policies of liability insurance, each with substantial coverage; one apparently purchased by the State Purchasing Department and the other apparently purchased by the State Bureau of Administration. On its face it would appear that if the legislature authorized purchase of such coverage the state would not intend to spend tax dollars for something that it does not need if there is in law no liability, so its obvious intent would be to waive immunity. Yet appellants fail to cite to us and we are unable to find any statutory authority for those departments or agencies to purchase those policies.[2] Here we again point out the distinction between governmental immunity on the state level as opposed to lower levels of government where it would seem entirely appropriate to purchase liability coverage when there is liability for proprietary as opposed to governmental acts. The cases cited by appellants all deal with liability of governmental units below the state level, so they are easily distinguishable.

Nor do we believe that either the State Purchasing Department or the Bureau of Administration has constitutional or statutory authority to waive the governmental immunity by purchasing liability coverage. It is only the legislature, expressing the will of the sovereign people, that is authorized to make this decision. No state official or board can usurp that authority. We decline to rule that the purchase of the liability insurance coverage above alluded to constitutes a waiver of governmental immunity.

We therefore affirm the judgment of the trial court.

All the Justices concur.

---

2. We note that a line of Attorney General's Opinions speaks to the question of authority to purchase liability insurance. Yet none of them cite any statutory authority either.