**In re REQUEST FOR OPINION OF the SUPREME COURT RELATIVE TO the CONSTITUTIONALITY OF SDCL 21–32–17 and Construction of SDCL 21–32–16.**

No. 15187.

Supreme Court of South Dakota.

Decided Dec. 18, 1985.

To his excellency, William J. Janklow, the Governor of the State of South Dakota.

Pursuant to the authority vested in the Governor under Article V, § 5 of the South Dakota Constitution, you have requested an opinion of the Supreme Court on an important question of law involved in the exercise of your executive power. The factual basis of your request is:

In 1981, the Legislature enacted SDCL 21–32–15 and SDCL 21–32–16. SDCL 21–32–15 authorized the State of South Dakota to purchase public liability insurance for the purpose of insuring the liability of the State, and its executive, legislative, and judicial officers, agents, or employees. SDCL 21–32–16 provides that to the extent that public liability insurance is purchased under SDCL 21–32–15, and to the extent there is coverage afforded thereunder, the State shall be deemed to have waived the common law doctrine of sovereign immunity and consented to suit in the same manner that any other party may be sued.

In 1983, the Legislature enacted SDCL 21–32–17 which provides that, except as provided in SDCL 21–32–16, any executive, legislative, and judicial employee, officer or agent of the State is immune from suit or liability for damages brought or sought against him in either his individual or official capacity for ministerial or discretionary acts committed while acting within the scope of his employment or agency.

In 1983, the State entered into a contract with Colonial Penn for public liability insurance which afforded coverage in varying limits to the executive, legislative, and judicial employees, officers or agents of the State in the following areas: comprehensive general liability,

comprehensive automobile liability, personal injury liability, and errors and omissions. The aggregate limit of liability for all claim payments, excluding defense costs, under said policy was Five Million Dollars ($5,000,000.00) in a one-year period.

On October 1, 1985, the State Office of Executive Management, Bureau of Administration received notification from Public Entity Underwriters, Ltd., the official representative for Colonial Penn, of cancellation of the insurance policy designated as Employees of the State of South Dakota PEC400665, effective on December 1, 1985. Public Entity Underwriters, Ltd. cited the lack of availability of reinsurance as the reason for cancellation of the policy.

The State Office of Executive Management, Bureau of Administration has explored the possibility of procuring a similar governmental special comprehensive liability policy from other sources. However, there is virtually no chance that such insurance coverage will be obtained given the mass exodus of the insurers from this line of coverage due to the unavailablity of reinsurance. Several states are likewise facing this very problem. As of December 1, 1985, then, the executive, legislative, and judicial employees, officers, and agents of the State will be without liability insurance coverage.

Those sections of law cited in the factual statement and relevant to your request state:

21–32–15. *Liability insurance—Purchase by state.* The state of South Dakota, through the commissioner of administration, may obtain and pay for public liability insurance to the extent and for the purposes considered expedient by the commissioner for the purpose of insuring the liability of the state, its officers, agents or employees.

21–32–16. *Waiver of immunity to extent of insurance coverage—Consent to suit.* To the extent such liability insurance is purchased pursuant to § 21–32–15 and to the extent coverage is afforded thereunder, the state shall be deemed to have waived the common law doctrine of sovereign immunity and consented to suit in the same manner that any other party may be sued.

21–32–17. *Immunity of state officers, employees and agents.* Except as provided in § 21–32–16, any employee, officer or agent of the state, while acting within the scope of his employment or agency, whether such acts are ministerial or discretionary, is immune from suit or liability for damages brought against him in either his individual or official capacity.

Your questions are:

### I.

Has the Legislature in enacting SDCL 21–32–17 constitutionally extended to executive, legislative, and judicial employees, officers or agents of the State, including members of State boards and commissions, immunity from suit or liability for damages brought or sought against them in either their individual or official capacity for ministerial or discretionary acts committed while acting within the scope of their employment, agency or duties?

### II.

If the Executive Department of government implements its own procedure for the defense, and establishes monies for the payment of claims, is immunity waived and consent to suit given for executive, legislative, and judicial employees, officers and agents of the State, including members of State boards and commissions, as provided by the Legislature under SDCL 21–32–16?

South Dakota Constitution art. V, § 5, provides, in part, "The Governor has authority to require opinions of the Supreme Court upon important questions of law involved in the exercise of his executive power and upon solemn occasions." The cancellation of the state's liability insurance policy, coupled with the inability to obtain replacement insurance has raised urgent

and important questions concerning the construction and constitutionality of SDCL 21–32–17 and the construction of SDCL 21–32–16. Because of the impact these circumstances have on state government, we accommodate your request for an advisory opinion.

### I.

■ Any legislative act is accorded a presumption in favor of constitutionality. *Independent Community Bankers Ass'n v. State*, 346 N.W.2d 737 (S.D.1984). That presumption is not overcome until the constitutionality of the act is clearly and unmistakenly shown and there is no reasonable doubt that it violates fundamental constitutional principles. *South Dakota Ass'n v. State*, 280 N.W.2d 662 (S.D.1979). In this case we limit our consideration of the constitutional question to whether Article III, § 27 of the South Dakota Constitution limits the law-making authority of the legislature to enact SDCL 21–32–17. *See Kramar v. Bon Homme County*, 83 S.D. 112, 155 N.W.2d 777 (1968).

"Sovereign immunity is the principle of jurisprudence, that the state cannot be sued unless it has given its consent or has otherwise waived its immunity." *City of Rapid City v. Boland*, 271 N.W.2d 60, 64 (S.D.1978). The sovereign immunity of the State of South Dakota is recognized in Article III, § 27 of the South Dakota Constitution. *Conway v. Humbert*, 82 S.D. 317, 145 N.W.2d 524 (1966); *High-Grade Oil Co. v. Sommer*, 295 N.W.2d 736 (S.D.1980). Article III, § 27 provides: "The Legislature shall direct by law in what manner and in what courts suits may be brought against the state." This provision is not self-executing. *Arcon Constr. Co. v. South Dakota Cement Plant*, 349 N.W.2d 407 (S.D.1984).

Prior to the enactment of SDCL 21–32–15, –16, and –17, the doctrine of sovereign immunity expressed in Article III, § 27, was "judge-made" law. *See High-Grade Oil Co., supra; Sioux Falls Constr. Co. v. City of Sioux Falls*, 297 N.W.2d 454 (S.D. 1980). "[W]e have consistently held that it is the exclusive province of the legislature and not the courts to abrogate or limit the doctrine of sovereign immunity." *Arcon, supra*, at 410. "[I]f there is to be a departure from the immunity rule, the policy must be declared and the extent of liability fixed by the legislature." *Merrill v. Birhanzel*, 310 N.W.2d 522, 524 (S.D.1981). Thus, we have always acknowledged the legislature's constitutional authority found in Article III, § 27 to impose conditions and limitations upon bringing an action against the state. *See Griffis v. State*, 68 S.D. 360, 2 N.W.2d 666 (1942). The legislature has now spoken on the subject; our prior "judge-made" law has been overruled and SDCL 21–32–17 now defines the scope of sovereign immunity.

We limit our interpretation of the immunity granted by SDCL 21–32–17 to protect governmental employees, officers or agents from liability for tort claims. This immunity, however, does not protect individuals from liability for actions under 42 U.S.C. § 1983 or other federal statutes that protect federally guaranteed rights. *See, e.g., Morrison v. Jones*, 607 F.2d 1269 (9th Cir.1979), *cert. denied*, 445 U.S. 962, 100 S.Ct. 1648, 64 L.Ed.2d 237 (1980); *Hampton v. City of Chicago*, 484 F.2d 602 (7th Cir.1973), *cert. denied*, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974); *see also Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

■ By the enactment of SDCL 21–32–15 and –16, the legislature expressly waived its sovereign immunity to the extent that liability insurance is purchased and to the extent coverage is afforded thereunder. *See Norgeot v. State*, 334 N.W.2d 501 (S.D.1983). By enacting SDCL 21–32–17, however, the legislature defined that instance where it retained the immunity expressed in Article III, § 27. Acting within the broad authority of South Dakota Constitution art. III, § 27, the legislature was clearly within its authority to "impose such conditions and limitations as public policy may seem to require." *Griffis, supra*, 68 S.D. at 364, 2 N.W.2d at 668. Consequently, we conclude that SDCL 21–32–17 does not violate South Dakota Constitu-

tion art. III, § 27, and answer your first question affirmatively. Immunity under SDCL 21–32–17 is granted to members of state boards and commissions to the extent that they are employees, officers or agents of the state.

## II.

■ We divide your second inquiry into two sections. First, if the executive department of government implements its own procedures for the defense of claims, will the defense of claims constitute liability insurance pursuant to SDCL 21–32–15 and thereby waive immunity and consent to suit under SDCL 21–32–16?

■ Generally, the sovereign immunity of a state cannot be waived by defending a suit unless there is clear constitutional and statutory authority to effect such a waiver. *See Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *Eidenmiller v. State,* 120 Neb. 430, 233 N.W. 447 (1930); *State ex rel. Eagleton v. Hall,* 389 S.W.2d 798 (Mo.1965); *Williams v. Eaton,* 443 F.2d 422 (10th Cir. 1971); *Oliver v. Kalamazoo Bd. of Educ.,* 73 F.R.D. 30 (W.D.Mich.1976); *see generally Darnall v. State,* 79 S.D. 59, 108 N.W.2d 201 (1961). We only recognize waiver of immunity where there is an *express* statutory waiver. *Arcon, supra.*

In construing statutes, this Court's main objective is to ascertain and give effect to the intention of the legislature. *Western Surety Co. v. Mydland,* 85 S.D. 172, 179 N.W.2d 3 (1970). This intent is best ascertained from the statutory language, *Argo Oil Corp. v. Lathrop,* 76 S.D. 70, 72 N.W.2d 431 (1955), where words used are to be understood in their ordinary sense. SDCL 2–14–1. Under SDCL 21–32–16 the legislature waived the common law doctrine of sovereign immunity "[t]o the extent such liability insurance is purchased" and "to the extent coverage is afforded thereunder." By the express provisions of SDCL 21–32–16, the legislature did not extend the waiver to include the defense of a claim.

■ You have also asked whether the establishment by the executive department of monies for the payment of claims will waive immunity within the meaning of SDCL 21–32–16. The test for an effective statutory waiver of sovereign immunity is two-pronged.

> An assertion of waived immunity may be ineffective unless specific legislative authority to sue the governmental entity has been given, *and* unless there are funds available for the satisfaction of the judgment, or power reposed in the governmental entity for the raising of funds necessary to satisfy a recovery against it. (emphasis added)

Shepard's/McGraw-Hill, *Civil Actions Against State Government* § 3.15, 130 (Winborne ed. 1982). The Maryland Court of Appeals held that to constitute an effective waiver, the statutes must contain "both a clear waiver of immunity as to matters within the scope of the agency's duties and obligations, and an authorization for the appropriation of funds to satisfy a judgment rendered against it in tort." *Katz v. Washington Suburban Sanitary Comm'n,* 284 Md. 503, 513, 397 A.2d 1027, 1033 (1979). *See also American Structures, Inc. v. City of Baltimore,* 278 Md. 356, 364 A.2d 55 (1976); *Charles E. Brohawn & Bros. v. Board of Trustees,* 269 Md. 164, 304 A.2d 819 (1973). The Kentucky Court of Appeals held that statutory provisions permitting the establishment of a fund from which malpractice claims against a medical center were to be paid were ambiguous and wholly inadequate to specifically waive sovereign immunity. The court stated: "In Kentucky, sovereign immunity may not be waived by implication because Section 231 of the Constitution has been interpreted as requiring specific waiver by the General Assembly directing in what manner and in what courts suit may be brought. (citations omitted)." *Frederick v. Univ. of Kentucky Medical Center,* 596 S.W.2d 30, 31 (Ky.Ct.App.1979); *cf.* S.D.Const. art. III, § 27. Likewise, we have held that in the absence of an express

statutory waiver, the doctrine of sovereign immunity expressed in our constitution will not be abrogated. *Arcon, supra; Kringen v. Shea,* 333 N.W.2d 445 (S.D.1983); *Merrill, supra.*

SDCL 21–32–16 provides:

> To the extent such liability insurance is purchased pursuant to § 21–32–15 and to the extent coverage is afforded thereunder, the state shall be deemed to have waived the common law doctrine of sovereign immunity and consented to suit in the same manner that any other party may be sued.

The plain meaning of this provision is to waive immunity only to the extent that the state is a party to a traditional insurance contract indemnifying the state for any losses it would be liable for in the absence of immunity. *See* SDCL 58–1–2(1). The legislature is clearly aware of the notion of self-insurance because it has used this concept in the area of workers' compensation. *See* SDCL 62–5–4. Self-insurance, however, is a different concept than liability insurance.

> We start from the premise that so-called self-insurance is not insurance at all. It is the antithesis of insurance. The essence of an insurance contract is the shifting of the risk of loss from the insured to the insurer. The essence of self-insurance, a term of colloquial currency rather than of precise legal meaning, is the retention of the risk of loss by the one upon whom it is directly imposed by law or contract. (citations omitted)

*American Nurses Ass'n v. Passaic General Hosp.,* 192 N.J.Super. 486, 491, 471 A.2d 66, 69 (1984). Self-insurance "involves no insurance as that term is ordinarily used in regulatory statutes, in tax statutes, and other legal contexts." R. Keeton, *Insurance Law* § 1.2(b)(6), 7–8 (1971). Understanding the words of SDCL 21–32–16 in their ordinary sense, the statute does not expressly state that self-insurance or the establishment of a fund for the payment of claims against the state would be a waiver of immunity. *Cf.* Colo.Rev.Stat. § 24–10–115(1)(a), 24–30–1510 (1985 Colo.Sess. Laws, Extraordinary Session); Wyo.Stat. Annot. § 1–39–118(c). Thus, the first requirement of express legislative authority to sue is absent. Consequently, the fund alone will not suffice as a waiver of sovereign immunity.

Respectfully submitted this 18th day of December, 1985.

> JON FOSHEIM
> Chief Justice
>
> GEORGE W. WUEST
> E.W. HERTZ
> Acting Justices

Because I find the query regarding an unspecified procedure for the payment of claims to be too vague to respond to, I cannot join in that part of the opinion. Monies for the payment of claims is antithetical to the concept of sovereign immunity.

In *High Grade Oil v. Sommer,* 295 N.W.2d 736, 739 (S.D.1980), we said that payment of insurance premiums for state liability coverage did not waive sovereign immunity because there was no legislative authorization. In *High Grade Oil,* the state was simply paying premiums to insurance companies who merely came into court and raised the defense of sovereign immunity. Here, there is a suggestion that the executive department is willing to use funds from some unknown source to *pay claims directly.* This smacks of a tort claims procedure which, if it is funded by legislative action, could well constitute a waiver of sovereign immunity. I would have to know more about this scheme and the source of the funds before I could knowledgeably answer the question. In all other respects, I concur in the opinion.

> ROBERT E. MORGAN
> Associate Justice

I would respectfully decline to grant Governor Janklow's request. His request belongs in the legislative arena and should not be answered by this Court. We, in the

judicial branch, owe a constitutional duty not to simply accommodate the executive branch of government, but, rather, to check on it. Separate but equal. That is the watchword. We need not "accommodate" requests from the Governor's office for legal opinions. This Court has historically spurned ex parte opinions where the rights of private parties (a) exist or (b) could later be involved.

## QUESTION ONE

As concerns the first question, the clear import of the statute answers the question. Its import was also peripherally addressed in *Holland v. Yankton Sch. Dist. 63-3*, 375 N.W.2d 199 (S.D.1985). Therefore, I would decline to render an advisory opinion to the Governor. This Court, except as provided in South Dakota Constitution Article V, § 5, is not the legal advisor of the Governor. The Attorney General is the Governor's legal advisor, *see In re House Resolution No. 30*, 10 S.D. 249, 251, 72 N.W. 892, 892 (1897), and SDCL 1–11–1(6), and he receives a salary therefor. SDCL 1–11–2. The Attorney General has a staff of competent attorneys and the Governor should address his questions to the Attorney General rather than to short-circuit the orderly process of law and usual judicial channels. This Court should not bind itself and either lock in or lock out legal rights in the future, in factual situations which have not been tried in a court of law.

## QUESTION TWO

As concerns the second question, this question is vague and deals with hypothetical facts geared toward future legislation. Although this question is couched in terms of the *executive department's* implementation of defense procedures and establishment of monies for claims, and although the Governor constructs and submits the state's budget, SDCL ch. 4–7, and may recommend measures he considers necessary, S.D. Const. art. IV, § 3, it is axiomatic that the legislature controls the purse strings and that any appropriation for such defensive procedures and monies must be accomplished by an in futuro legislative act. The form and content of any such act and/or appropriation is entirely unknown at the present time and this Court cannot "render any opinion as to the general constitutionality or validity of future legislative action, the exact terms of which necessarily rest entirely in speculation and conjecture." *In re Opinion of the Judges*, 50 S.D. 324, 326, 210 N.W. 186, 187 (1926). *See also, Opinion of the Judges*, 61 S.D. 107, 114, 246 N.W. 295, 297 (1933). This Court should not render opinions on questions which would bind it, in precedent, on legislative acts which the legislature *might* pass in the future. Therefore, I would decline to render an advisory opinion based on speculation and conjecture. When accommodating gubernatorial requests, this Court is to exercise great caution. *In re Opinion of the Supreme Court*, 87 S.D. 399, 402, 209 N.W.2d 668, 670 (1973); *In re Chapter 6, Session Laws of 1890*, 8 S.D. 274, 276, 66 N.W. 310, 311 (1896). The Governor's second question, however, implies many hypothetical situations such as "procedure for the defense" and "establishes monies for the payment of claims" which have such a vague meaning, in the future, that it would be exceedingly dangerous for this Court to bind itself by precedent.

FRANK E. HENDERSON
Associate Justice