Dawn F. WILSON, Individually and as Special Administrator of the Estate of John D. Wilson, Plaintiff,

v.

Edward HOGAN, Defendant and Third Party Plaintiff

v.

CITY OF RAPID CITY, and State of South Dakota, Third Party Defendants.

No. 17369.

Supreme Court of South Dakota.

Considered on Briefs May 23, 1991.

Decided July 24, 1991.

Mark Barnett, Atty. Gen., Camron Ho-seck, Asst. Atty. Gen., Pierre, for third party defendant, State of S.D.

Steven C. Beardsley, Craig A. Pfeifle, Lynn, Jackson, Shultz & Lebrun, P.C., Rapid City, for Edward Hogan.

SABERS, Justice.

State appeals denial of its motion to dismiss third party complaint against state on grounds of sovereign immunity and deficient notice.

## Facts

On September 20, 1989, Wilson and Hogan were involved in a car accident on a Rapid City street in which Wilson died. On November 9, 1989, plaintiff, as Wilson's representative, brought suit against Hogan for negligence for damages for Wilson's death.

On May 21, 1990, Hogan's attorney notified the South Dakota attorney general, pursuant to SDCL 3–21–2 and 3–21–3,[1] that he intended to file a third party liability claim against the state that "[a]n inadequately designed and maintained storm drainage system on East St. Joseph Street (Highway 79) ... contributed to ... Wilson's death[.]" Hogan's attorney wrote: "Despite the history of the water drainage problems on this road, an adequate storm drainage system has not been installed." On June 26, 1990, Hogan filed his third party complaint for contribution or indemnity against Rapid City (city) and the State of South Dakota (state).

On July 17, 1990, state moved to dismiss Hogan's third party complaint on the grounds that it was barred by sovereign immunity, that Hogan failed to give state commissioner of administration notice as required by SDCL 3–21–3 and that notice to the attorney general was two months late under SDCL 3–21–2. City later filed its own motion to dismiss on the grounds that Hogan failed to provide the required notice to city officials. Following a hearing, circuit court denied both motions to dismiss.

On December 20, 1990, this court granted state's petition for intermediate appeal from the order denying the motion for dismissal. State raises sovereign immunity and deficiency of notice. City did not appeal the denial of its motion.

### 1. Sovereign Immunity

There are no facts in dispute in this intermediate appeal. Whether Hogan's third party action against state is barred by sovereign immunity is a question of law which is "reviewed by this court de novo." *Brown v. Egan Consol. Sch. Dist.*, 449 N.W.2d 259, 260 (S.D.1989) (citing *Beville v. U.S.D./Bd. of Regents*, 420 N.W.2d 9, 11 (S.D.1988)). We give no deference to the trial court's order denying the state's motion to dismiss. *Id.*

The question is whether the *plaintiff's* cause of action against state *in tort* would be barred by the doctrine of sovereign immunity. Hogan points out that his third party complaint against state for contribution or for indemnity under an implied contract theory does not sound in tort, but is equitable in origin. *Dehn v. Prouty*, 321 N.W.2d 534, 537 (S.D.1982); *Degen v. Bayman*, 86 S.D. 598, 200 N.W.2d 134, 136 (1972) (*Degen I*). See also *Samuelson v. Chicago, Rock Island & Pacific Ry. Co.*, 287 Minn. 264, 178 N.W.2d 620, 623 (1970); 18 Am.Jur.2d *Contribution* § 2 (1985). The right to contribution is now codified at SDCL 15–8–12. However, actions for contribution do not stand alone. They are

---

1. SDCL 3–21–2 provides:

No action for the recovery of damages for personal injury, property damages, error or omission or death caused by a public entity or its employees may be maintained against the public entity or its employees unless written notice of the time, place and cause of the injury is given to the public entity as provided by this chapter within one hundred eighty days after the injury.

SDCL 3–21–3 provides in part:

Notice shall be given to the attorney general and ... [i]n the case of the state of South Dakota, to the commissioner of administration; ... [i]n the case of a municipality, to the mayor or city finance officer[.]

derivative of the principal action, and "[t]here can be no right to contribution unless the injured party has a possible remedy against two or more persons." *Burmeister v. Youngstrom,* 81 S.D. 578, 139 N.W.2d 226, 231 (1965). *See also* 18 Am. Jur.2d, *supra,* at § 3. In other words, Hogan's third party derivative action against state is barred by sovereign immunity if an action by the principal plaintiff against state in tort would have been barred by sovereign immunity.

■ In general, the doctrine of sovereign immunity as found in the common law and in our South Dakota Constitution means that the governing acts of the state, its agencies and other public entities [2] cannot be attacked in court without the state's consent. S.D. Const. art. III, § 27; *Blue Fox Bar, Inc. v. City of Yankton,* 424 N.W.2d 915, 917 (S.D.1988). However, this broad statement of the principle is subject to significant qualifications.

Not all acts performed by all public entities or their employees are governing acts. To prohibit all lawsuits against all public officials, regardless of the character of their jobs, and all public entities, regardless of the nature of their functions, would defeat another constitutional provision: the "open courts" provision at S.D. Const. art. VI, § 20, according to which "[a]ll courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay." *See Oien v. City of Sioux Falls,* 393 N.W.2d 286, 291 (S.D.1986).

■ Therefore, the negligent acts of public employees are not shielded by sovereign immunity when the employees are acting in a merely ministerial, rather than discretionary capacity. *Gasper v. Freidel,* 450 N.W.2d 226, 230 (S.D.1990); *Bego v. Gordon,* 407 N.W.2d 801, 806 (S.D.1987); *Nat'l Bank of S.D. v. Leir,* 325 N.W.2d

845, 848–850 (S.D.1982); *Kruger v. Wilson,* 325 N.W.2d 851, 853–854 (S.D.1982); *Sioux Falls Constr. Co. v. City of Sioux Falls,* 297 N.W.2d 454, 458–459 (S.D.1980). Similarly, the functions of a public entity which are proprietary or commercial, as opposed to governmental, are not shielded by sovereign immunity. *Aune v. B–Y Water Dist.,* 464 N.W.2d 1, 3 (S.D.1990); *Blue Fox Bar,* 424 N.W.2d at 918; *Oien v. City of Sioux Falls,* 393 N.W.2d at 290–291; *Jensen v. Juul,* 66 S.D. 1, 278 N.W. 6, 8 (1938); *State v. Board of Commissioners,* 53 S.D. 609, 222 N.W. 583, 592 (1928); *O'Rourke v. City of Sioux Falls,* 4 S.D. 47, 54 N.W. 1044, 1045–46 (1893).

As to the state itself, "there is no distinction between governmental and proprietary functions." *High–Grade Oil Co., Inc. v. Sommer,* 295 N.W.2d 736, 738 (S.D.1980) (citing *State v. Board of Commissioners,* 222 N.W. at 593). Therefore, the inquiry into whether a function is governmental or proprietary is only relevant in the case of non-state public entities like municipalities, which participate in the state's sovereign immunity only "to a lesser extent." *Aune v. B–Y Water Dist.,* 464 N.W.2d at 5.

■ Even where suit against a public entity would otherwise be barred, either because it is the state or because it is a public entity other than the state acting in a governmental capacity, the public entity may choose to waive sovereign immunity. It may do so by entering into a contract which implicitly gives the other party to the contract a right of action upon it. *Blue Fox Bar,* 424 N.W.2d at 917–918. *See also Finck v. City of Tea,* 443 N.W.2d 632, 635 (S.D.1989). The state may also waive sovereign immunity by legislative enactment identifying the conditions under which lawsuits of a specified type would be permitted. S.D. Const. art. III, § 27; *Brown v. Egan Consol. Sch. Dist.,* 449 N.W.2d at 262; *Norgeot v. State,* 334 N.W.2d 501, 503 (S.D.1983); *High Grade Oil,* 295 N.W.2d at 739.

---

**2.** SDCL 3–21–1(1) defines "public entities" as: "the state of South Dakota, all of its branches and agencies, boards and commissions. The term also includes all public entities established

by law exercising any part of the sovereign power of the state, including, but not limited to municipalities[.]"

■ "Under Article XIII, § 9 of our state constitution, construction and maintenance of public highways is a function of state government." *High–Grade Oil,* 295 N.W.2d at 737. The state legislature has "paramount control over all the public highways of the state[.]" *Hurley v. Rapid City,* 80 S.D. 180, 121 N.W.2d 21, 24 (1963). State may delegate its "paramount control" over public highways to municipalities. *Id.* SDCL 9–45–1 provides:

> Every municipality shall have power to lay out, establish, open, vacate, alter, widen, extend, improve, repair, grade, gravel, service, pave, repave, bridge, construct a viaduct upon or over, erect equipment for street lighting in and otherwise improve, and establish and change the grade of roads, streets, alleys, sidewalks, and public grounds, and to regulate the making of openings and connections therein and the erection of lights thereon as provided by this title.

However, whether control over the roadway on which Wilson died was delegated to city under SDCL 9–45–1 and, if so, whether city's authority is governmental or proprietary need not be reached, because city neither based its motion for dismissal on sovereign immunity nor appealed the denial of its motion. However, even delegation of "paramount control" would not remove the shield of sovereign immunity from the state. Therefore, state is immune from suit arising from the construction and maintenance of roadways unless it has waived its sovereign immunity.

### 2. *Waiver of Sovereign Immunity?*

The next question is whether state waived its sovereign immunity from suits arising from the construction or maintenance of roadways. It is clear that no contract is involved and had plaintiff brought an action against state, that action would have been in tort. Therefore, if state waived its sovereign immunity, it was by legislative action.

SDCL 21–32–16 provides in part:

> To the extent ... liability insurance is purchased ... and to the extent coverage is afforded thereunder, the state shall be deemed to have waived the common law

doctrine of sovereign immunity and consented to suit in the same manner that any other party may be sued.

Under this statute, the state's sovereign immunity may be waived, but only by the purchase of liability insurance. The affidavit of state's Commissioner of Bureau of Administration states that no such liability insurance has been purchased which would provide coverage for this tort action against state. Therefore, state has not waived its sovereign immunity under SDCL 21–32–16.

■ Even though self-insurance through participation in a risk sharing pool accomplishes the same purpose as purchase of commercial insurance, it has been held that participation in such a risk sharing pool does not waive the state's sovereign immunity under SDCL 21–32–16. *In re Request for Opinion of Supreme Court,* 379 N.W.2d 822, 827 (S.D.1985). Nor does the state waive sovereign immunity through participation in a risk sharing pool under SDCL 21–32A–1:

> To the extent that any public entity, *other than the state,* participates in a risk sharing pool or purchases liability insurance and to the extent that coverage is afforded thereunder, the public entity shall be deemed to have waived the common law doctrine of sovereign immunity and shall be deemed to have consented to suit in the same manner that any other party may be sued.... (Emphasis added).

While this statute permits some public entities to waive sovereign immunity by participating in a risk sharing pool, it specifically excludes state from its provisions.

■ Finally, we note that at the time of the accident, SDCL 31–32–10 provided:

> In case any highway, culvert, or bridge shall become in whole or in part destroyed or out of repair by reason of floods, fires, or other cause to such extent as to endanger the safety of public travel, it shall be the duty of the governing body or board under statutory duty to maintain such highway, culvert, or bridge upon receiving notice thereof to

cause to be erected for the protection of travel and pubic safety, within forty-eight hours thereafter, substantial guards over such defect or across such highway of sufficient height, width, and strength to guard the public from accident or injury and to repair the same within a reasonable time thereafter. It shall also be the duty of such governing body or board to guard any abandoned public highway, culvert, or bridge in like manner. Any officer who violates any of the provisions of this section commits a petty offense.

Although this statute imposes a duty, the duty is only to warn of danger and to make reasonably timely repairs upon notice that a damaged roadway is creating a safety hazard. The statute creates no duty to design or construct a roadway safely in the first place. *Gulbranson v. Flandreau Twp.*, 458 N.W.2d 361, 362 (S.D.1990); *Zens v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 386 N.W.2d 475, 478 (S.D.1986). Beyond this narrow statutory duty, there is no common law duty that would permit a "right of action against a [public entity] for recovery of damages resulting from a defective highway." *Zens, supra* (citations omitted).

Moreover, SDCL 31–32–10 does not waive the sovereign immunity of any public entity for breach of the warn-and-repair duty it sets forth. Its companion statute, SDCL 31–32–11, did that and provided in part:

> Any person who shall sustain injury to person or property by reason of any violation of § 31–32–10 shall have a cause of action against the county, township, city, or town as the case may be for such damages as he may have sustained....

However, SDCL 31–32–11 was *repealed* in 1986 and even when it was in effect, it waived sovereign immunity only for public entities other than the state.

In summary, we hold that sovereign immunity shielded state from any liability in tort arising from the construction and maintenance of public roadways, and that sovereign immunity has not been waived by state. As a result, the doctrine of sovereign immunity would have barred suit by plaintiff against state for injuries and damages received in the September 20, 1989 car accident. Because a suit in tort against state would have been barred, Hogan's derivative third party action against state for contribution or indemnity is also barred by sovereign immunity.

Since Hogan's third party action is barred on the basis of sovereign immunity, we need not reach the issue of whether notice of the action to state was proper under SDCL 3–21–2 and 3–21–3.

Reversed and remanded, with directions to the circuit court to grant state's motion for dismissal.

MILLER, C.J., and HENDERSON and AMUNDSON, JJ., concur.

WUEST, J., concurs in result.

WUEST, Justice (concurring in result).

I agree that Hogan's third-party action is barred on the basis of sovereign immunity. I do not join the entire opinion because in my opinion it discusses issues on sovereign immunity which are not relevant to this case.