#29129-a-DG
**2020 S.D. 38**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

LP6 CLAIMANTS, LLC,                           Plaintiff and Appellant,

  v.

SOUTH DAKOTA DEPARTMENT
OF TOURISM AND STATE
DEVELOPMENT, SOUTH DAKOTA
GOVERNOR'S OFFICE OF ECONOMIC
DEVELOPMENT, SOUTH DAKOTA
DEPARTMENT OF TOURISM, and THE STATE
OF SOUTH DAKOTA,                              Defendants and Appellees,

  and

SDRC, INC., SD INVESTMENT FUND,
LLC 6, and JOOP BOLLEN,                       Defendants,

  and

SDRC, INC., SD INVESTMENT FUND,
LLC 6, and JOOP BOLLEN,                       Third-Party Plaintiffs,

  v.

HENRY GLOBAL CONSULTING GROUP
a/k/a HENRY GLOBAL a/k/a HENRY
GLOBAL GROUP a/k/a HENRY GLOBAL
CONSULTING USA, incorporated under the
laws of the People's Republic of China,       Third-Party Defendant.

\* \* \* \*

CONSIDERED ON BRIEFS
APRIL 21, 2020
OPINION FILED **06/24/20**

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CHRISTINA L. KLINGER
Judge

* * * *

STEVEN D. SANDVEN
Beresford, South Dakota

EZIO SCALDAFERRI
BRUCE ROBINS of
Feder Kaszovitz, LLP
New York, New York                          Attorneys for plaintiff and
                                            appellant.


PAUL E. BACHAND
AARON P. SCHEIBE
Special Assistant Attorneys General
Pierre, South Dakota

ROBERT L. MORRIS
Special Assistant Attorney General
Belle Fourche, South Dakota                 Attorneys for defendants and
                                            appellees.

#29129

GILBERTSON, Chief Justice

[¶1.]     A group of investors in the EB5 immigrant investment program sued various agencies that implemented the program in South Dakota, claiming fraud in procuring their investments, which were lost when the project went bankrupt.  The circuit court granted a motion to dismiss by the state agencies involved based on sovereign immunity.  The investors appeal the circuit court's decision, and we affirm.

## Facts and Procedural History

[¶2.]     This case arises from implementation of the federal EB5 immigrant investment program in South Dakota.  The EB5 Program offers preferred immigrant status to foreign nationals who invest in commercial projects with the purpose of creating a specified number of jobs through each project.  Under 8 U.S.C. § 1153(b)(5), the required investment per individual is at least $1,000,000, but for projects in economically disadvantaged or rural areas (regional centers), the threshold investment is reduced to a $500,000 minimum.

[¶3.]     The South Dakota Department of Tourism and State Development (DTSD) entered into a consulting contract with SDRC, Inc.[1] in 2009 to administer and promote EB5 Program projects in South Dakota.  The contract was made "for the purpose of having SDRC administer the Regional Center and the EB5 Program and to market the EB5 Program for the benefit of South Dakota[.]"  SDRC had administrative duties to work with United States Customs and Immigration (USCIS) and the "non-exclusive right and privilege to market projects for

---

1.     SDRC is wholly owned by Joop Bollen, a former State employee.

-1-

development within the Regional Center's territory[.]" Promotion of projects required DTSD's written consent first, and three funds were established to ensure indemnification to DTSD when necessary. At the end of the term of the agreement, all remaining funds were to return to DTSD.

[¶4.] The contract covered future projects as well as nine existing projects, including an initial equity investment in the Northern Beef Packers processing plant in Aberdeen. SDRC solicited further investments in the Northern Beef Packers project by sending a Confidential Offering Memorandum to the thirty-five Chinese nationals that form the LP6 Claimants.[2] The Offering Memorandum detailed the requirements for a qualifying investment through the SDIF Limited Partnership 6 (Partnership).[3] To comply with the regional center designation, each Limited Partnership Unit required a $530,000 investment (a $500,000 investment and $30,000 for issue expenses). The Offering Memorandum stated that the investments would be used to construct the packing plant facility and purchase machinery and equipment capable of processing 7,500 head of cattle each week and 396,000 head annually. The project was meant to create 563 jobs by 2010. The Offering Memorandum stated that there was "no assurance that investors will obtain final immigration status," and that the project was "suitable only for investors . . . who can afford the loss of their entire investment." It also said there

---

2. Two offering memos were sent, one in November 2009 and one in January 2010, but they appear to contain the same provisions. One had a detailed plan attached for the Northern Beef Packers project.

3. South Dakota Investment Fund LLC 6, an affiliate of SDRC, is the sole general partner of the SDIF Limited Partnership 6.

was no assurance "that the jobs required to be created and maintained . . . will be achieved." Day-to-day management of the investments would be conducted by the Partnership, including supervising SDRC's performance of its obligations under its consulting agreement.

[¶5.] Each Claimant invested $530,000 (over $18 million collectively) through the Partnership. Their collective investment was lost when the Northern Beef Packers plant went bankrupt in 2013. The South Dakota Governor's Office of Economic Development (GOED)[4] terminated the contract with SDRC the same year, and the United States Department of Homeland Security sent the GOED a Notice of Intent to Terminate the Regional Center in September 2015 for failure to submit required information to the USCIS and failure to demonstrate the promotion of economic growth.

[¶6.] Claimants filed an amended complaint[5] in December 2015 against DTSD, GOED, South Dakota Department of Tourism, the State of South Dakota, SDRC, SD Investment Fund LLC 6, and Joop Bollen. The amended complaint alleged fraud, breach of fiduciary duty, aiding and abetting breach, and included a request to pierce the corporate veil.

[¶7.] The state agencies (collectively the State) filed a motion to dismiss under SDCL 15-6-12(b)(5), on three grounds, arguing: (1) sovereign immunity bars

---

4. In 2011, DTSD was abolished and the GOED and the South Dakota Department of Tourism took its place.

5. The initial complaint excluded the GOED, Department of Tourism, and the State of South Dakota.

suit against the State; (2) Claimants' tort claims are barred by failure to give mandatory statutory notice under SDCL 3-21-2; and (3) the claims are barred by SDCL 21-32-2's one-year statute of limitations for tort claims against the State. SDRC, SD Investment Fund LLC 6, and Bollen filed an answer and crossclaim against the State for indemnity or contribution, in addition to a third-party claim against Henry Zou and the Henry Global Consulting Group, which lined up the potential Chinese investors, for defamation and indemnity or contribution. The State moved to dismiss the crossclaim because sovereign immunity would bar the derivative claim. Bollen also joined in the State's motion to dismiss against Claimants in so far as the claims related to any actions he took while a State employee.

[¶8.] Claimants' opposition to the State's motion to dismiss argued that sovereign immunity was not a shield because the State was operating a commercial enterprise. Claimants further argued that SDCL chapter 21-32A acts as a waiver of sovereign immunity because the consulting agreement created participation in a risk-sharing pool through the requirement that SDRC obtain liability insurance that covered the State. The State responded that an express waiver was required for sovereign immunity to be waived, and that there was no commercial enterprise by the State.

[¶9.] After a hearing on the State's motion to dismiss, the circuit court held in its memorandum decision that Claimants' suit against the State was barred by

sovereign immunity.[6] The court determined that there was no express waiver of immunity by the Legislature, and the commercial enterprise argument was unavailing. This Court denied Claimants' petition for intermediate appeal.

[¶10.]        Eventually all underlying claims against the other defendants, as well as the third-party claims, were dismissed by stipulation. The final stipulation, in August 2019, for dismissal of SDRC, SD Investment Fund LLC 6, and Bollen as defendants resolved with finality all underlying claims, and Claimants filed a notice of appeal on the issue of sovereign immunity in September 2019. Claimants raise the following claims:

1.      Whether sovereign immunity applies to commercial activities conducted by the State.

2.      Whether the Legislature expressly waived the State's sovereign immunity for claims arising from the EB5 projects.

**Standard of Review**

[¶11.]        We review a circuit court's grant of a motion to dismiss de novo. *N. Am. Truck & Trailer, Inc. v. M.C.I. Commc'n Servs., Inc.*, 2008 S.D. 45, ¶ 6, 751 N.W.2d 710, 712. "A motion to dismiss under SDCL 15-6-12(b) tests the legal sufficiency of the pleading, not the facts which support it. For purposes of the pleading, the court must treat as true all facts properly pled in the complaint and resolve all doubts in favor of the pleader." *Guthmiller v. Deloitte & Touche, LLP*, 2005 S.D. 77, ¶ 4, 699 N.W.2d 493, 496.

---

6.      At the hearing, the State conceded that the statute of limitations and notice claims were secondary to the sovereign immunity claim, so the circuit court only considered sovereign immunity.

[¶12.] "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *N. Am. Truck & Trailer*, 2008 S.D. 45, ¶ 6, 751 N.W.2d at 712 (quoting *Thompson v. Summers*, 1997 S.D. 103, ¶ 5, 567 N.W.2d 387, 390). "[W]hile the court must accept allegations of fact as true when considering a motion to dismiss, the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 2007 S.D. 34, ¶ 9, 731 N.W.2d 184, 190 (quoting *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002)).

### Analysis and Decision

[¶13.] Under the South Dakota Constitution, "[t]he Legislature shall direct by law in what manner and in what courts suits may be brought against the state." S.D. Const. art. III, § 27. "Sovereign immunity is the right of public entities to be free from liability for tort claims unless waived by legislative enactment." *Bickner v. Raymond Twp.*, 2008 S.D. 27, ¶ 10, 747 N.W.2d 668, 671. Any waiver of the State's sovereign immunity must be expressly identified by the Legislature. *See High-Grade Oil Co., Inc. v. Sommer*, 295 N.W.2d 736, 739 (S.D. 1980).

[¶14.] Three cases set up the applicable framework for sovereign immunity analysis here. The first is *High-Grade Oil*, where a car accident led the plaintiff to sue the State Highway engineer responsible for designing or approving the design of state highways, claiming the curve the accident occurred on did not comply with the applicable safety standards. 295 N.W.2d at 737. The engineer moved to dismiss in

part on the basis of sovereign immunity as a State employee, which was treated as a motion for summary judgment by the trial court and granted. *Id.*

[¶15.] On appeal, this Court determined that the action was against the State, so sovereign immunity would apply, and affirmed the trial court because the Legislature had not waived sovereign immunity for the type of action brought by the plaintiff. *Id.* at 738-39. In reaching its decision, this Court reaffirmed precedent that "if there is to be a departure from the rule of governmental immunity it should result from legislative action." *Id.* at 738 (quoting *Conway v. Humbert*, 82 S.D. 317, 325, 145 N.W.2d 524, 529 (1966)).

[¶16.] Two cases involving the South Dakota Cement Plant followed *High-Grade Oil*. *Arcon Construction Company, Inc. v. South Dakota Cement Plant* involved a breach of contract action for the sale of cement to the plaintiff, and the cement plant asserted sovereign immunity. 349 N.W.2d 407 (S.D. 1984). This Court decided that "[t]he cement plant is clearly an arm of the state" based on the declaration in the South Dakota Constitution that the plant's activities were a function of state government used for a public purpose. *Id.* at 410. *See also* S.D. Const. art. XIII, § 10. The determination was further bolstered by SDCL 5-17-2.1, which "provided: 'The state cement commission and the state cement plant under its control shall comprise a principal department of state government.'" *Id.* (quoting SDCL 5-17-2.1). However, the Court determined that by enacting the Uniform Commercial Code (U.C.C.), which covered the cement plant's sales contracts, the Legislature "expressly waived sovereign immunity for the cement plant whenever the cement plant enters into contracts for the sale of goods." *Id.*

[¶17.] *L.R. Foy Construction Company, Inc. v. South Dakota State Cement Plant Commission* expanded *Arcon*'s holding by applying the waiver of immunity to commercial torts arising from the cement plant's operations. 399 N.W.2d 340, 347 (S.D. 1987). In that case, the cement plant breached its contract with the plaintiff by overselling its production capacity for the year, and in addition to the contract claim, the plaintiffs alleged multiple tort claims, including fraud and deceit, negligent misrepresentation, and tortious interference with contract, related to the plant's commercial operations. The cement plant asserted sovereign immunity as a defense against the tort claims. *Id.* at 344. The Court identified that *Arcon* "never reached the question of tort immunity for Cement Plant." *Id.* at 346. However, we reasoned that "[i]nasmuch as we have already waived sovereign immunity for claims sounding in contract, we find that holding Cement Plant responsible for its commercial torts is a logical extension of *Arcon* in conjunction with the intent and meaning of the U.C.C." *Id.* at 347. This is because "when authorization for Cement Plant operations appeared in our constitution, it created an agency of state government with independent proprietary powers or functions, and sufficiently independent from the State to be sued." *Id.* at 346.

[¶18.] The Court observed the statement from *High-Grade Oil* that "as to the state there is no distinction between governmental and proprietary functions." *Id.* at 348 (quoting *High-Grade Oil*, 295 N.W.2d at 738). However, the Court distinguished *High-Grade Oil* because that case involved claims against the State related to personal injury and not claims involving "obligations and remedies within the intent and meaning of the U.C.C." *Id.* at 348. The Court also relied on *Kunkel*

*v. United Sec. Ins. Co. of New Jersey*, 84 S.D. 116, 168 N.W.2d 723 (1969), "which recognized that independent obligations may accrue as a matter of law even though the parties operate in a contractual setting." *L.R. Foy*, 399 N.W.2d at 349. Finally, the Court held that the cement plant "should be held fully accountable for both its contract and commercial tort claims" based on *Arcon*, the constitutional provisions related to the cement plant, and the way the cement plant operates, along with the express U.C.C. waiver. *Id.*

[¶19.] Claimants assert that this situation is similar to *L.R. Foy*, *Arcon*, and *Aune v. B-Y Water District*, 464 N.W.2d 1 (S.D. 1990) (denying state sovereign immunity to a water district), because waiver here is based on similar legislative schemes and a distinction between governmental and commercial activity. But *Arcon* involved the U.C.C., *see* 349 N.W.2d at 410, and *L.R. Foy's* holding was "expressly limited to the operations of [the] Cement Plant, and [did] not affect the general rule set forth in *High-Grade* [*Oil*]." *L.R. Foy*, 399 N.W.2d at 349. Finally, *Aune* did not concern the *State's* sovereign immunity, but rather a business enterprise with a commercial purpose. 464 N.W.2d at 4.

[¶20.] Nevertheless, Claimants maintain that *High-Grade Oil* does not apply, because that case did not involve a commercial enterprise and *L.R. Foy* distinguished *High-Grade Oil*. In Claimants' view, *High-Grade Oil*, *Arcon*, *L.R. Foy*, and *Aune* are all good law, but can only be reconciled through a commercial enterprise and governmental activity distinction. Further, according to Claimants even in the absence of an express waiver by the Legislature, this Court has followed a general nation-wide rule that sovereign immunity does not apply to claims arising

from the State's operation of a commercial enterprise. Claimants rely primarily on *L.R. Foy* and *Aune* for that assertion, but also cite federal cases to support the idea that soliciting investments in securities is a commercial activity.[7]

[¶21.] Claimants argue that while there were express waivers in *L.R. Foy* and *Arcon*, the cases were actually decided based on the activities being a state commercial enterprise. It is clear in those cases, though, that the Legislature's express waiver is what made the cases consistent with *High-Grade Oil*.

[¶22.] Although in *L.R. Foy* this Court noted the distinction between commercial and government functions, *Arcon* and *L.R. Foy* concerned the U.C.C. and the Cement Plant and are thus not controlling here. Rather, the rule in *High-Grade Oil* controls and an express waiver by the Legislature is required to waive sovereign immunity. *See High-Grade Oil*, 295 N.W.2d at 738. *See also State v. Bd. of Comm'rs of Beadle Cty.*, 53 S.D. 609, 222 N.W. 583, 593 (1928) ("[T]here cannot be successfully maintained, as a matter of law, in this state, under the circumstances here involved, a distinction between what has been frequently denominated as a 'sovereign' and 'nonsovereign' capacity of the state[.]"). That an express waiver is required was reaffirmed in *L.R. Foy*. 399 N.W.2d 340 at 348. United States Supreme Court cases also lend support to the rule. *See Kelo v. City of*

---

7. *See EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro, S.A.*, 894 F.3d 339 (D.C. Cir. 2018); *Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98 (2d Cir. 2016); *Wolf v. Banco Nacional de Mexico, S.A.*, 739 F.2d 1458 (9th Cir. 1984); *Wasserstein Perella Emerging Mkts. Fin., LP v. Province of Formosa*, No. 97 Civ. 793(BSJ), 2000 WL 573231 (S.D. N.Y. May 11, 2000); *Tucker v. Whitaker Travel, Ltd.*, 620 F. Supp. 578 (E.D. Pa. 1985).

*New London, Conn.*, 545 U.S. 469, 484, 125 S. Ct. 2655, 2665, 162 L. Ed. 2d 439 (2005) ("Promoting economic development is a traditional and long-accepted function of government."); *Berman v. Parker*, 348 U.S. 26, 33-34, 75 S. Ct. 98, 103, 99 L. Ed. 27 (1954) (considering a development project governmental despite a private entity being partially involved in the implementation). The State's sovereign immunity applies to all of its functions unless waived, including commercial activities. We return then to the basic *High-Grade Oil* rule to determine whether the Legislature waived sovereign immunity for claims arising from the EB5 Program.[8]

[¶23.]    From our review there is no express waiver here, and no statutory or constitutional provision has been identified that would provide such a waiver. Claimants, however, argue that SDCL 21-32A-1 created a waiver based on the consulting agreement requiring SDRC to purchase liability insurance covering the State. *High-Grade Oil* also dealt with the argument that purchasing liability insurance constitutes a waiver of immunity, and determined that the agencies purchasing coverage did not have the authority to waive the State's immunity by doing so. 295 N.W.2d at 739. Only the Legislature can waive the State's sovereign immunity. And under SDCL 21-32A-1 the Legislature specifically exempted the State from its waiver provisions for public entities purchasing liability insurance. *See* SDCL 21-32A-1 (providing that a public entity "other than the state" waives

---

8.    The *High-Grade Oil* standard for waiver of sovereign immunity has been consistently followed by this Court in subsequent cases. *See, e.g., Truman v. Griese*, 2009 S.D. 8, 762 N.W.2d 75; *Hanson v. S.D. Dep't of Transp.*, 1998 S.D. 109, 584 N.W.2d 881.

sovereign immunity to the extent that entity purchases liability insurance or participates in a risk sharing pool).

[¶24.] Claimants also argue, for the first time on appeal, that the Uniform Securities Act, SDCL 47-31B-101, *et seq.*, provides an express waiver. The claim cannot survive because it was not asserted below. *See A-G-E Corp. v. State*, 2006 S.D. 66, ¶ 19, 719 N.W.2d 780, 786. When an issue is raised for the first time on appeal this Court need not consider it. *Cain v. Fortis Ins. Co.*, 2005 S.D. 39, ¶ 22, 694 N.W.2d 709, 714. Additionally, although Claimants assert that this argument responds to the State's reply brief below, which it had no opportunity to respond to in writing, the Act was not brought up at the motions hearing either.

[¶25.] Claimants maintain that this Court should nevertheless address the issue because we can do so in certain circumstances. When this Court has considered issues not raised below, we were "faced with a compelling case." *In re J.D.M.C.*, 2007 S.D. 97, ¶ 27, 739 N.W.2d 796, 805. There is no compelling reason to analyze the issue on appeal even if the activities do fall under the Act, because Claimants would at most identify an implied waiver of immunity. Implied waiver does not satisfy our standard under *High-Grade Oil*.[9]

---

9. No claim is advanced herein that as to express waiver *Arcon* and *L.R. Foy* were improperly decided. As such, we do not address that issue today. We note that those cases were decided in 1984 and 1987 and have not been followed for their holdings that adoption of the U.C.C. is an express waiver. Thus, we leave for another day the issue of whether when the Legislature passes a comprehensive uniform code, it complies with the constitutional standard that a waiver must be expressly stated by the Legislature and cannot be implied by this Court.

[¶26.] It is also telling that when the EB5 Program was created, no express waiver of sovereign immunity was included in that legislation. Without an express waiver, Claimants cannot maintain their action against the State.

## Conclusion

[¶27.] Claimants have made no showing that an express waiver of sovereign immunity applies to the State's activities with the EB5 Program. Their suit cannot be maintained, and the circuit court properly granted the State's motion to dismiss. The circuit court's decision is affirmed.

[¶28.] KERN, JENSEN, and SALTER, Justices, and WILBUR, Retired Justice, concur.

[¶29.] WILBUR, Retired Justice, sitting for DEVANEY, Justice, disqualified.